369 A.2d 862
COMMONWEALTH of Pennsylvania
v.
Joseph MOORE, Appellant.

Superior Court of Pennsylvania.

Submitted June 28, 1976.

Decided Feb. 18, 1977.

164

Calvin S. Drayer, Jr., Assistant Public Defender, Norristown, for appellant.

Bert M. Goodman, Assistant District Attorney, Lansdale, and William T. Nicholas, District Attorney, Norristown, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

■ Appellant was convicted by a jury of simple assault,[1] false imprisonment,[2] and criminal conspiracy to kidnap.[3] In this appeal, he contends that the lower court erred in denying his motion to suppress his prior

1. The Crimes Code, Act of December 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S. § 2701.

2. The Crimes Code, supra; 18 Pa.C.S. § 2903.

3. The Crimes Code, supra; 18 Pa.C.S. §§ 903, 2901.

convictions.[4]  We agree and, therefore, reverse the judgment of sentence and remand for a new trial.

On Friday, May 24, 1974, at approximately 10 p. m., two teenagers, Barbar Guinn and Alba Fellows were walking home from a drive-in movie in Montgomery County.  As they proceeded on the Sumneytown Pike towards Route 309, a white station wagon passed them and sounded its horn.  A few minutes later, the girls saw the same station wagon parked on the shoulder of the road. Two men then jumped out of the bushes, grabbed the girls, and forced them into the bushes.  The men ordered the girls to be quiet or else they would cut their throats. One of the men asked Miss Guinn whether she had "pot" or money.  She replied in the negative.  The two men took a blazer and a sweater from the girls which they placed over the girls' heads as blindfolds.  They dragged the girls across the street and pushed them into the car. After entering the car, Miss Guinn looked up and saw Police Officer Nerlinger of the Lower Gwynedd Police Department a short distance away in his patrol car.  She immediately began to scream for help; both girls jumped out of the car and ran to Officer Nerlinger.  The two men escaped by running through the bushes and into nearby fields.

The Lower Gwynedd Police Department performed a registration check on the station wagon and discovered that it was registered in appellant's name.  Early in the morning of May 25, 1974, appellant reported to the Con-

4.  Appellant also contends that the lower court erred in dismissing without a hearing, his motion to suppress an identification.  Because of our disposition of this case, we do not reach that issue. However, we note that nothing in Rule 323, Pa.R.Crim.P. prohibits the litigation of a suppression motion after the grant of a new trial, if there has been no prior determination of the issue.  See *Commonwealth v. Throckmorton*, 241 Pa.Super. 62, 359 A.2d 444 (1976).  In the instant case, because appellant's suppression motion was dismissed prior to trial without a hearing, there has been no determination of the issue.  Accordingly, appellant should be permitted to file a new suppression motion prior to his new trial.

shohocken police that his car had been stolen. On the following day, the Lower Gwynedd police arrested appellant when he came to the station to retrieve his car.

After a preliminary hearing on June 5, 1974, appellant was bound over for action by the Grand Jury. Subsequent to his indictment, appellant filed a timely motion to suppress identification evidence and his prior convictions of statutory rape in 1964 and burglary in 1965. On January 29, 1975, appellant argued his pre-trial motions. On the following day, the lower court dismissed appellant's motion to suppress for noncompliance with Rule 323(d), Pa.R.Crim.P., 19 P.S. Appendix. The lower court deferred ruling on appellant's motion to suppress prior convictions.

At trial, during cross-examination of one of the Commonwealth's witnesses, appellant discovered the identification methods used by the police in his case. On May 26, 1974, while appellant waited at the Lower Gwynedd Police Station to obtain his car, the two victims observed him and two companions through a one-way mirror. Immediately thereafter, the police showed the girls an array of ten photographs, two of which were of the appellant. Based on the identification made by the two girls, appellant was arrested that same day.

After the Commonwealth rested its case, appellant renewed his motion to suppress the evidence of his prior convictions. In chambers, the trial court again refused to make a ruling. However, the court indicated that it was inclined to allow the introduction of the convictions. Based upon this indication, appellant's counsel stated that he was forced to bring out appellant's criminal record on direct examination but that appellant did not waive any rights by so doing. The lower court agreed that appellant had preserved his rights on the record; on direct examination appellant's counsel elicited testimony concerning the prior convictions.

The jury found appellant guilty of false imprisonment, criminal conspiracy, and simple assault. The court en banc denied appellant's post-trial motions. Appellant was sentenced to two concurrent terms of imprisonment of eight months to two years and to a term of probation to run consecutively to the first two sentences. This appeal followed.

Appellant contends that the lower court erred in denying his application to suppress the prior conviction for statutory rape.

Prior to *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973), Pennsylvania decisional law made it clear that the Commonwealth could introduce, in rebuttal, evidence of prior convictions to attack the credibility of a defendant who had elected to testify in his own behalf. *Commonwealth v. Scoleri,* 432 Pa. 571, 248 A.2d 295 (1968); *Commonwealth v. Peterman,* 430 Pa. 627, 244 A.2d 723 (1968); *Commonwealth v. Butler,* 405 Pa. 36, 173 A.2d 468 (1961). In *Commonwealth v. Butler,* supra, the Supreme Court explained the rationale for the rule as follows: "If a defendant offers himself as a person worthy of belief, the jury has the right to know what kind of man he is—to aid in assessing his credibility. His previous record is admissible for this purpose just the same as testimony of prior reputation for veracity is evidence for the jury's consideration." 405 Pa. at 47, 173 A.2d at 474.

*Commonwealth v. Bighum,* supra, held that, although this rule did not offend due process, it required some modification. Accordingly, the Supreme Court limited the prior convictions that may be used for impeachment purposes to those involving dishonesty or false statement. The Court stated: "Since the avowed purpose of using prior convictions in rebuttal is to cast doubt upon the defendant's veracity generally as a witness, it is important to limit the convictions so used to crimes involving dishonesty or false statement . . . . Convictions

for crimes not in this category have no probative value in this regard." 452 Pa. at 566, 307 A.2d at 262.

The Supreme Court went further than merely limiting the use of prior convictions to those involving dishonesty or false statement; it adopted the balancing approach adopted in *Luck v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965). Thus, after determining that the prior conviction was one involving dishonesty or false statement, the court must then apply the factors enumerated in *Luck* to determine its admissibility to impeach. The considerations in *Luck,* as adopted in *Bighum,* are: "the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction." 452 Pa. at 567, 307 A.2d at 263.

In *Commonwealth v. Katchmer*, 453 Pa. 461, 309 A.2d 591 (1973), the Supreme Court again discussed the use of prior convictions for impeachment purposes. It stated: "More recently, we have recognized that, in order to prevent smearing rather than merely discrediting of the witness, such impeachment should be limited to crimes involving dishonesty or false statement." 453 Pa. at 464, 309 A.2d at 593. See also in *Commonwealth v. Miller,* 465 Pa. 458, 350 A.2d 855 (1976). In *Miller,* after limiting prior convictions that may be used for impeachment purposes to those involving dishonesty or false statement, the decision on admissibility was left within the sound discretion of trial court, subject to the guidelines outlined in *Bighum.* In *Miller,* appellant's counsel did not at any time request that the trial court prevent appellant's prior record from being used for impeachment purposes. Therefore, because no relief was requested, it was not an abuse of discretion not to provide it.

■■ In the instant case, appellant twice requested that the trial court suppress his two prior convictions.

Although the lower court stated in chambers, that it again refused to rule on the suppression motion, it nonetheless told appellant that it was inclined to allow the introduction of both prior convictions. This indication by the trial court was the equivalent of a ruling on the issue.[5] Because of this adverse ruling, appellant's counsel was forced to elicit the prior convictions on direct examination. The trial court expressed its concern that if it ruled against the Commonwealth prior to appellant's testimony, appellant could then affirmatively establish his own good character and, that the Commonwealth would be precluded from introducing any rebuttal testimony. However, the trial court should have distinguished between the use of prior convictions for impeachment purposes and their introduction to rebut an appellant's evidence of good character. For impeaching the credibility of appellant as a witness, only crimes showing a propensity for dishonesty or false statement may be used. But, when a defendant takes the stand in his own defense and attempts to establish affirmatively his own good character, the Commonwealth may then introduce prior convictions to rebut this prior character testimony.[6]

5. The trial court made it clear that it would not rule on appellant's *Bighum* motion until after appellant had completed his testimony. This procedure prevented appellant from knowing with certainty whether the conviction could be introduced for impeachment purposes. The lower court's procedure undercut the holding of *Bighum* by forcing appellant to admit the conviction on direct examination, in order to limit its prejudicial impact.

6. The Act of March 15, 1911, P.L. 20, § 1; 19 P.S. § 711, provides: "Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,—

"One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; . . . . ."

■ The crime of statutory rape does not involve dishonesty or false statement. Therefore, under *Bighum, supra,* and subsequent cases, it could not be used for purposes of impeachment, and it was error for the trial court to rule otherwise.

It is clear that the introduction of appellant's prior conviction for statutory rape may have had an adverse effect on appellant's defense. As stated in *Bighum*: "we cannot be unmindful of the tendency of a normal juror to accept testimony of prior convictions as a basis for finding a predisposition to commit the crime charged." *Bighum,* supra, 452 Pa. at 566, 307 A.2d at 262. It is important that prior convictions be used only to impeach a witness's credibility, not smear him. *McIntosh v. Pittsburgh Railways Co.,* 432 Pa. 123, 247 A.2d 467 (1968).

Because of the trial court's error in refusing to exclude appellant's prior conviction of statutory rape, we reverse the judgment of sentence and remand for a new trial.

Reversed and remanded.

PRICE, J., concurs in the result.

WATKINS, President Judge, and VAN der VOORT, J., dissent.