372 A.2d 880

COMMONWEALTH of Pennsylvania

v.

Donald L. BRYANT, Appellant.

Superior Court of Pennsylvania.

Submitted Dec. 6, 1976.

Decided April 19, 1977.

Thomas W. Houser, Bethlehem, for appellant.

Robert A. Freedberg, Assistant District Attorney, Easton, and John E. Gallagher, District Attorney, Easton, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

JACOBS, Judge:

This is an appeal from the denial of post-trial motions by the lower court en banc following a jury trial in which

appellant was convicted of robbery.[1] Since we believe the lower court properly dismissed the three arguments now raised on appeal, we affirm.

On December 5, 1974, at approximately 1:00 a. m., three black male individuals entered through a side door of Bill's Campus Arms Restaurant in Easton, Pennsylvania. One of the men was carrying a rifle. Two of the men wore nylon stockings over their faces, while the third wore a ski mask. The proprietor of the restaurant, William Shackleford, testified that he was ordered at gunpoint to turn over some six hundred dollars, after which the three men left the scene. The police arrived on the scene shortly thereafter. After obtaining a description of the men, the police began cruising the area near the restaurant. Officer Homaki testified that minutes after leaving the scene of the robbery, the police discovered an automobile parked behind a building not far from the restaurant. They heard voices and what sounded like people running behind an embankment to the rear of the vehicle. Upon approaching the vehicle, the officers discovered two stockings and a ski mask on the ground. Although the officers gave chase, they were unable to catch a glimpse of the person they had heard behind the embankment. They did, however, make plaster casts of a "sneaker" print in the mud near the car. When the vehicle involved was searched, appellant's wallet was found inside.

Appellant was arrested and charged with robbery on December 11, 1974, and thereafter committed to the Northampton County Prison. Pursuant to a search warrant, a pair of black converse sneakers worn by appellant were seized while he was incarcerated. A motion to suppress those sneakers was denied on June 9, 1975. Appellant was found guilty in a jury trial in September, 1975. Post-trial motions were denied, and this appeal followed.

The first argument raised by appellant is that there was no probable cause to support the issuance of the search warrant pursuant to which the sneakers were seized, and

1. Act of December 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 3701 (1973).

that consequently the lower court erred in failing to suppress the sneakers. We disagree. The affidavit for the warrant set forth the circumstances of the robbery as previously discussed herein, including the discovery of the stockings and wallet, and the fact that appellant, when committed to the county prison, was wearing sneakers having the same pattern on the sole and approximately the same size as the prints found near the automobile and the abandoned stockings. The affidavit went on to state that a witness who had seen three negro males standing outside of the restaurant with a rifle just prior to the time of the robbery, had identified a picture of appellant as being one of the three men.

It is possible that no one portion of the affidavit would supply probable cause in this case, however, the determination of probable cause should be made from a consideration of the affidavit in its entirety. *Commonwealth v. Mamon*, 449 Pa. 249, 297 A.2d 471 (1972). We have held that an eyewitness identification, when volunteered to the police as in this case, is in and of itself sometimes enough to support the issuance of a warrant, even when the identity of the eyewitness is not revealed. *Commonwealth v. Crawley*, 209 Pa.Super. 70, 223 A.2d 885 (1966). Such an identification, when coupled with all the other facts set forth in the affidavit, as heretofore recited, clearly supports the issuance of the warrant.

Appellant's second argument, that his conviction is not supported by sufficient evidence, is wholly without merit. In considering this argument, we must view the evidence in a light most favorable to the Commonwealth, together with all reasonable inferences therefrom. *Commonwealth v. McFadden*, 448 Pa. 146, 292 A.2d 358 (1972). In so viewing the evidence, we find that appellant's wallet was discovered in the car adjacent to which the ski mask and nylons were discovered; that a state police criminal investigator testified that the sneakers seized from appellant matched the plaster casts of the footprints found near the vehicle and the stocking masks; and most importantly, that the victim of

the robbery, William Shackleford, identified appellant as being one of the three robbers, the one wearing the light colored stocking. In addition, Mr. Shackleford testified that he recognized appellant as having been in the Campus Arms Restaurant several weeks prior to the robbery. Clearly the evidence was sufficient to sustain the guilty verdict.

Appellant's third and final assignment of error is that he was forced to forego testifying on his own behalf because of the possibility that his prior criminal record would be allowed into evidence for the purposes of impeachment. This claim must also fail. At the conclusion of the Commonwealth's case, a sidebar conference was held at which it became clear that if appellant took the stand, the Commonwealth would attempt to impeach him on cross-examination by placing into evidence appellant's prior convictions for burglary, attempted burglary, and larceny. At sidebar, the trial judge stated on the record that he felt the convictions were admissible and that he intended to so rule. In his commendable efforts to protect appellant's rights to the fullest extent, the trial judge indicated that if appellant did take the stand, and the Commonwealth attempted to impeach, that he would reconsider the admissibility of the prior convictions.

Appellant argues that he was left unsure of whether or not his prior convictions would be admitted, and thus was coerced into not taking the stand, resulting in the denial of due process. Appellant would require the trial judge to make a binding evidentiary ruling on the matter before the defense presented its case. We believe that such a ruling is neither required nor is it in the best interest of the accused.

The trial judge, in his discretion, may permit the Commonwealth to introduce evidence of a criminal defendant's prior convictions for the purpose of impeachment if the defendant has taken the stand, and if the convictions are for crimes involving dishonesty or false statements. *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973). Appellant's prior convictions for burglary and larceny are clearly crimes connoting dishonesty. *Commonwealth v. Amos*, 445

Pa. 297, 284 A.2d 748 (1971). Additional elements to be considered by the judge in exercising his discretion, as set forth in *Commonwealth v. Bighum,* supra, include the age of the accused when convicted of prior crimes, the circumstances surrounding the commission of the prior crimes; the length of the criminal record; the relative importance of the jury hearing the accused's story versus the knowledge of his prior crimes; and, most importantly, whether or not taking the stand on his own behalf is the accused's sole means of defending himself.

The trial judge specifically stated on the record that he had considered the elements set forth in *Commonwealth v. Bighum,* supra, and that he was convinced that appellant's criminal record should be admitted. We find no abuse of discretion in that decision. The judge went on to say that if appellant chose to testify, the judge would re-examine the situation in light of the nature of appellant's testimony and any other defense witnesses presented. This in fact is the only logical means of applying the standards set forth in *Bighum.* To hold that the trial judge must make a binding ruling on the admissibility of the convictions *before* the defense has presented any evidence would serve to remove the most crucial factor by which the judge is to be guided in making his ruling, that being whether or not appellant has any means of presenting a defense other than by taking the stand himself.

We find that the trial judge committed no abuse of discretion in ruling that appellant's prior convictions were admissible. We find also that no error was committed by the trial judge in holding that if appellant did in fact testify, the judge would once again review the elements set forth in *Bighum* in light of appellant's testimony. On the contrary, we believe that the approach taken by the judge was the proper one, and one that showed the utmost concern for appellant's rights.

Judgment of sentence affirmed.

SPAETH, J., files a dissenting opinion in which HOFFMAN, J., joins.

SPAETH, Judge, dissenting:

I disagree with the majority's conclusion that the trial judge complied with *Commonwealth v. Bighum*, 452 Pa. 554, 307 A.2d 255 (1973).

As the judge himself says in his opinion (at p. 6a): "At the time of the objection in the within matter, the Trial Court ruled that burglary was a crime involving dishonesty and could, therefore, be used to impeach a criminal defendant's testimony." Defense counsel responded that under *Bighum* this ruling was not enough; the court should go further and examine "the need, number one, of attempting to impeach the defendant's testimony and credibility as well as several other things."

Counsel was correct. *Bighum* requires the trial judge to make a sequential decision: first, whether the prior conviction was for a crime involving dishonesty; and second, if it was, whether even so the prosecution should not be allowed to prove it. In *Bighum* the Supreme Court held:

> Rather than make the admissibility of such evidence turn solely on the nature of the specific conviction, we agree with the approach advocated in *Luck [v. United States*, 121 U.S.App.D.C. 151, 348 F.2d 763 (1965)]. Some of the considerations mentioned in *Luck* were: the age and nature of the prior crime; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to the search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction.

452 Pa. at 567, 307 A.2d at 263.

The question presented in this case, therefore, is this: Should the trial judge engage in the *Bighum* balancing evaluation *before* the defendant takes the stand, or may he say to defense counsel, as the judge did here, that he will defer that evaluation *until* the defendant takes the stand? The majority answers this question by saying that evaluation may be deferred. We have already ruled in *Commonwealth v. Moc.* 246 Pa.Super. 163, 369 A.2d 862 (J.

1028/76, filed Feb. 18, 1977) (PRICE, J., concurred in the result; WATKINS, President Judge, and VAN der VOORT, J., noted dissent), that it should not be deferred. There the defendant's counsel requested the trial judge to rule that the Commonwealth would not be allowed to prove two prior convictions. The judge refused to rule but told counsel that he was "inclined to allow" proof of convictions. "This indication," we held, "was the equivalent of a ruling on the issue," adding in a footnote that "[t]he lower court's procedure undercut the holding of *Bighum* by forcing appellant to admit the conviction on direct examination in order to limit its prejudicial impact." Id. 246 Pa.Super. at 169 n.5, 369 A.2d at 865 n.5.

Further authority for the proposition that the trial judge should engage in the *Bighum* balancing evaluation before the defendant takes (or decides not to take) the stand appears in *Gordon v. United States*, 127 U.S.App.D.C. 343, 383 F.2d 936 (1967), *cert. denied* 390 U.S. 1029, 88 S.Ct. 1421, 20 L.Ed.2d 287 (1968), where the court that decided *Luck* stated:

> [I]n many cases the best way for the District Judge to evaluate the situation is to have the accused take the stand in a non-jury hearing and elicit his testimony and allow cross-examination before resolving the *Luck* issue. Not only the trial judge, but both counsel, would then be in a better position to make decisions concerning the impeachment issue.

*Id.* at 941.

Here the trial judge, contrary to the majority's opinion, *never* engaged in the *Bighum* balancing evaluation. As a result, defense counsel was forced to decide not to call his client.[1] Since counsel should not have been forced to decide whether to call his client until *after* the court had engaged

1. As noted, in *Commonwealth v. Moore, supra,* counsel's decision was different: he called his client, and had him admit the prior conviction. This difference is immaterial; the point is that both in *Moore* and here counsel was obliged to decide whether to call his client before the trial judge engaged in the *Bighum* balancing evaluation.

in the *Bighum* balancing evaluation, I would award a new trial.

HOFFMAN, J., joins in this opinion.