466 A.2d 1039

**COMMONWEALTH of Pennsylvania**

v.

**Gary Lee GONCE, Appellant.**

Superior Court of Pennsylvania.

Argued May 3, 1983.

Filed Sept. 30, 1983.

Petition for Allowance of Appeal Denied Feb. 28, 1984.

22

Brian S. Quinn, Havertown, submitted a brief on behalf of appellant.

David E. Fritchey, Assistant District Attorney, Media, for Commonwealth, appellee.

Before CERCONE, President Judge, and McEWEN and HOFFMAN, JJ.

HOFFMAN, Judge:

Appellant contends that the verdict was against the weight of the evidence, and that the lower court erred in (1) refusing to dismiss the charges against him pursuant to the Interstate Agreement on Detainers; (2) granting the Commonwealth's petition to extend under Pa.R.Crim.P. 1100 and the Detainer's Agreement; (3) permitting evidence of prior convictions; (4) refusing to recuse itself; and (5) making various trial rulings. Finding no merit in appellant's numerous contentions, we affirm the judgment of sentence.

On October 24, 1980, following an October, 1977 robbery in Delaware County, appellant was extradited from the state of Delaware to Pennsylvania after lengthy proceedings pursuant to the Interstate Agreement on Detainers, 42 Pa.C.S.A. § 9101 *et seq.* Once in Pennsylvania, appellant was found guilty after a jury trial of robbery and conspiracy. Following the denial of post-trial motions, appellant was sentenced to consecutive terms of ten-to-twenty years imprisonment for robbery and five-to-ten years for conspiracy, both Pennsylvania sentences to run consecutive to appellant's Delaware sentence. A motion to reconsider sentence and post-verdict motions were denied, prompting this appeal.

I.

Appellant contends first that the jury's guilty verdict was contrary to the weight of the evidence. "The grant of a new trial on the ground that the verdict is against the weight of the evidence is generally committed to the sound discretion of the trial court. Where the evidence is conflicting, the credibility of the witnesses is solely for the jury, and if its finding is supported by the record, the trial court's denial of a motion for a new trial will not be disturbed." *Commonwealth v. Larew,* 289 Pa.Superior Ct. 34, 37, 432 A.2d 1037, 1038 (1981) (citations omitted). Further, "it must appear from the record that the jury's verdict was so contrary to the evidence as to shock one's sense of justice and to make the award of a new trial imperative." *Commonwealth v. Barnhart,* 290 Pa.Superior Ct. 182, 185, 434 A.2d 191, 192 (1981). So viewed, the evidence is as follows: Robert Mattei, owner and manager of Sparn's seafood restaurant, testified that on October 31, 1977, at 2:00 a.m., he was robbed by two hooded, armed men, outside of his restaurant, struck with a gun and thrown into the trunk of his car. Appellant's co-conspirators, Bearl Bonecutter, Jr., and Steven Davidson, testifying for the Commonwealth pursuant to plea agreements, both stated that appellant was involved in planning and executing the crime and drove the car transporting them to and from the scene. (N.T. March 30, 1981 at 36.) Police Officer Narvell testified that in the early morning hours he had seen an orange and white Ford Pinto on Baltimore Pike driving toward and away from Sparn's restaurant four times. Although Narvell could not identify the passengers, he noted that their number changed several times. Appellant offered the testimony of three alibi witnesses who stated that appellant was at a party at one of their homes on the morning in question. Appellant also presented a letter allegedly signed by Bonecutter, his signature verified by an expert witness, stating that Bonecutter was lying about appellant's involvement in order to receive a favorable deal from the Commonwealth.

The Commonwealth's own handwriting expert testified that in his opinion, Bonecutter had not signed the letter.

Although the testimony of Bonecutter and Davidson stems from corrupt, polluted sources and must therefore be carefully scrutinized by the fact-finder, *Commonwealth v. Hudson*, 489 Pa. 620, 628, 414 A.2d 1381, 1385 (1980), "guilt or innocence may be predicated on [the] uncorroborated testimony of an accomplice." *Id.; see also Commonwealth v. Tervalon*, 463 Pa. 581, 345 A.2d 671 (1975). In addition, the jury, in evaluating the witness' credibility may accept all, part or none of his testimony. *Commonwealth v. Young*, 494 Pa. 224, 431 A.2d 230 (1981). Here, the jury accepted the Commonwealth's evidence of appellant's direct participation in and execution of the robbery. We cannot find the verdict so against the weight of the evidence as to shock one's sense of justice and, accordingly, find no merit in appellant's contention.[1]

## II.

Appellant next raises several challenges to the lower court's refusal to dismiss the charges against him pursuant to the Interstate Agreement on Detainers, 42 Pa.C.S.A. § 9101 *et seq.*

## A.

First, appellant argues that his application for habeas corpus relief should have been granted because Delaware officials failed to comply with Art. III(c) of the Agreement on Detainers. Although we agree that Delaware prison officials failed in their duty toward appellant, his requested relief, dismissal of charges in Pennsylvania, cannot be

---

1. Because we find the verdict supported by the weight of the evidence, we need not address appellant's related claim that the evidence was insufficient to find him guilty beyond a reasonable doubt. In reviewing the weight of the evidence we look to all of the evidence; however, in evaluating sufficiency we look only to the evidence in the light most favorable to the Commonwealth. *See Commonwealth v. Lewis*, 276 Pa.Superior Ct. 451, 454, 419 A.2d 544, 546 (1980).

granted. When a foreign state has lodged a detainer against a prisoner

> [t]he warden, commissioner of corrections or other official having custody of the prisoner shall promptly inform him of the source and contents of any detainer lodged against him and shall also inform him of his right to make a request for final disposition of the indictment, information or complaint on which the detainer is based.

42 Pa.C.S.A. § 9101, Art. III(c). Here, the testimony at appellant's habeas corpus hearing leaves us in doubt as to whether appellant was fully informed of the Pennsylvania detainers lodged against him and his accompanying rights. On direct examination, appellant contended that he was shown the Pennsylvania detainers but they were never explained and he was never informed of his right to request a final disposition of charges. On cross-examination, however, he admitted that he was told on July 10, 1980, that there were outstanding charges, detainers lodged against him, and that he "knew they were trying to get me up here [Pennsylvania]." (N.T. January 9, 1981 at 7). Appellant also testified that he knew from approximately August of 1979 that Pennsylvania was attempting to extradite him from Delaware. The Commonwealth elicited testimony indicating that appellant viewed the detainers and refused to sign them on July 10, 1980. We are not convinced that appellant was informed of his right to request a final disposition, however, because the Commonwealth failed to present evidence of Delaware's full compliance with Art. III(c). *Cuyler v. Adams*, 449 U.S. 433, 440, 101 S.Ct. 703, 707, 66 L.Ed.2d 641 (1981), implies that the rights accorded prisoners under Art. III(c) must be provided by officials. In *Cuyler*, the Supreme Court held that prisoners involuntarily transferred by detainer pursuant to Art. IV were entitled to the same pre-transfer rights as those prisoners transferred under the Extradition Act. The Court noted that those prisoners who initiate their own transfer under Art. III, however, are not entitled to these same rights, i.e. a pre-trial hearing, because Art. III has its own safeguards that

"[require] the warden to notify the prisoner of all outstanding detainers and then to inform him of his right to request final disposition of the criminal charges underlying those detainers." *Id.* at 444, 101 S.Ct. at 709. Therefore, appellant was clearly entitled to not only be informed of the detainers, but to be told of his right to request a final disposition.

█ Notwithstanding our doubt that appellant was fully informed of his rights, we do not agree that the Delaware prison officials' lapse dictates that the Pennsylvania charges be dismissed. The Detainers Agreement specifically provides for a remedy of dismissal of charges in three situations: (1) if trial is not commenced within the period prescribed in Art. III(a) and Art. IV(c) as specified by Art. V(c); (2) under Art. IV(e) where trial does not commence before the prisoner is returned to the sending state; and (3) when the receiving state fails or refuses to accept temporary custody under Art. V(c). Because the legislature chose to mention the specific situations when dismissal of charges is the appropriate relief, we will not generalize the relief and extend it to cover possible procedural errors made by another state's prison officials. Accordingly, under the Detainers Agreement we will not dismiss the Commonwealth's charges against appellant.[2]

### B.

█ Appellant next challenges the lower court's refusal to hold a hearing on and the denial of his pre-trial petition to dismiss for violation of his Art. III(a) speedy trial rights. Art. III(a) provides:

Whenever a person has entered upon a term of imprisonment in a penal or correctional institution of a party state, and whenever during the continuance of the term of imprisonment there is pending in any other party state any untried indictment, information or complaint on the basis of which a detainer has been lodged against the

---

**2.** The appropriate vehicle for relief may be a civil lawsuit against Delaware prison officials. *See Cuyler v. Adams, supra.*

prisoner, *he shall be brought to trial within 180 days after he shall have caused to be delivered to the prosecuting officer and the appropriate court of the prosecuting officer's jurisdiction written notice of the place of his imprisonment and his request for a final disposition to be made of the indictment, information or complaint....*

42 Pa.C.S.A. § 9101, Art. III(a) (emphasis added).  Appellant maintains that on July 24, 1980, he requested final disposition of the detainers and should therefore have been tried within 180 days or by January 26, 1981.  We find this contention without merit.  First, appellant delivered his alleged request for final disposition to the Delaware County Clerk of Courts and not to the prosecuting officer as required by Art. III(a).  Second, we cannot reasonably interpret the document, entitled "Defendant's Answer to Application for Extending Time for Commencement of Trial and Motion to Dismiss Charges", as requesting final disposition.  In appellant's pro se answer he wrote, "The petitioner states that he was ready, and prepared and able to proceed with the trial since September, 1979 ...."  This language does not request final disposition of the detainers.  In addition, appellant's answer was filed in response to the Commonwealth's petition to extend under Pa.R.Crim.P. 1100.  Accordingly, we find that appellant was not entitled to be tried by January 26, and thereby was not denied his speedy trial rights under Art. III(c).[3]

### C.

◼ Appellant next alleges that the lower court erred in granting the Commonwealth's request to extend time until trial pursuant to Art. IV(c) and Pa.R.Crim.P. 1100.  We find these contentions without merit.  The dates pertinent to evaluating appellant's claims are as follows:  On August 9,

**3.** Appellant alleges also that pursuant to *Commonwealth v. Young*, 262 Pa.Superior Ct. 243, 396 A.2d 736 (1978), our Court should remand for a more complete record.  We disagree, finding that appellant's answer to the Commonwealth's Petition to Extend is all that is needed to dispose of this issue.

1979, the Commonwealth entered the criminal complaint against appellant. On January 25, 1980, the Commonwealth petitioned to extend time for trial to 120 days after appellant's (then future) arrival in Pennsylvania.[4] The petition was granted on March 5, 1980 and continued on July 25. On October 29, appellant arrived in Pennsylvania[5] to face three related robbery charges, making the rundate February 21, 1981. All three were listed for trial as of January 26, 1981; however, on January 13 the Commonwealth petitioned to consolidate the three. The lower court, pursuant to appellant's opposition, denied the request. Trial proceeded on one of the other cases on January 26 and appellant was acquitted of that robbery on January 28. The next day, the Commonwealth petitioned to extend time for trial pursuant to both Art. IV(c) and rule 1100.

Under Art. IV(c), "trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but *for good cause shown in open court,* the prisoner or his counsel being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance." 42 Pa.C.S.A. § 9101 Art. IV(c) (emphasis added). The record indicates that the lower court was not available to try defendant on January 29. The court noted that

> The Court [had] been specially ordered by the Chief Justice of Pennsylvania to preside in Philadelphia in a trial beginning tomorrow which will take approximately three or four days. In addition to that, we have an extensive motion list for the end of next week. In addition to that, we have a case involving a prosecution for murder in the first degree where I understood the Commonwealth is seeking the death penalty which has been scheduled for trial either the latter part of, I believe, the latter part of February.

**4.** Hence, the Art. IV and rule 1100 rundates were the same, February 21, 1981.

**5.** Appellant does not challenge any of the Commonwealth's requests for continuances up to the point of his arrival in Pennsylvania.

In addition to that, we have several other rather protracted cases all scheduled for jury trials in the month of February where Rule 1100 is of paramount importance and the Court makes the assertion on the record that there is simply no time available prior to the trial and disposition of those cases to have the cases involving this defendant tried by a jury.

(N.T. January 29, 1981 at 6). We find the court's documented unavailability good cause to grant the Commonwealth's petition to extend under Art. IV(c).

Similarly, under Pa.R.Crim.P. 1100(c),

[T]he trial court may grant an extension ... only upon a record showing: (1) the "due diligence" of the prosecution, and (2) certification that trial is scheduled for the earliest date consistent with the court's business; provided that if the delay is due to the court's inability to try the defendant within the prescribed period, the record must also show the causes of the court delay and the reasons why the delay cannot be avoided.

*Commonwealth v. Mayfield,* 469 Pa. 214, 222, 364 A.2d 1345, 1349–50 (1976). *See Commonwealth v. Bytheway,* 290 Pa.Superior Ct. 148, 434 A.2d 173 (1981); *Commonwealth v. Delpiano,* 290 Pa.Superior Ct. 510, 434 A.2d 1260 (1981). Here, the Commonwealth, demonstrating due diligence, petitioned for a consolidation of the three actions pending against appellant. The lower court denied the petition because of appellant's opposition. Had the Commonwealth been successful, appellant would have been tried on this information in late January, 1981, well before the February 21 rundate. Furthermore, the record clearly indicates that trial was scheduled for the earliest date consistent with the court's availability and demonstrates the specific causes of the court's delay. Accordingly, the lower court properly granted the Commonwealth's petition to extend time for trial under rule 1100(c).

### III.

Appellant next challenges several of the lower court's trial rulings.

32

## A.

Appellant contends that the lower court erred in permitting Officer Narvell's testimony because it was unduly prejudicial. We find this contention meritless. Evidence that establishes a material fact or tends to make a fact at issue more or less probable, is relevant. *Commonwealth v. Brown*, 489 Pa. 285, 303, 414 A.2d 70, 79 (1980); *Commonwealth v. Myers*, 439 Pa. 381, 384, 266 A.2d 756, 758 (1970). Further, rulings on evidentiary questions "are controlled by the discretion of the trial court and this Court will reverse only for clear abuse of that discretion." *Commonwealth v. Scott*, 469 Pa. 258, 270, 365 A.2d 140, 146 (1976). In the instant case, Officer Narvell testified that while on duty in the early morning hours of October 31, 1977, he saw an orange and white Ford Pinto with Delaware license plates travelling on Baltimore Pike toward Sparn's restaurant two times, and away from the restaurant, two times. On the car's first trip, headed toward the restaurant, three persons were in the car. On its return, the car had only one occupant. As it headed a second time in the direction of the restaurant it had one occupant, but it headed away from Sparns the last time with three. All four sightings occurred between approximately 12:30 a.m. and 2:30 a.m. Officer Narvell's testimony corroborated Bonecutter's and Davidson's testimony that an orange and white Pinto was the vehicle used to transport the conspirators to and from the scene of the crime. Characterized as such, the evidence aided the court's inquiry and was therefore probative and relevant. Accordingly, we find no merit in appellant's contention.

## B.

Appellant next challenges the lower court's manner of deciding and final decision to admit evidence of his prior criminal record. With regard to the lower court's decision-making process, appellant challenges (1) the court's refusal to hold a pre-trial hearing, and make a pre-trial ruling on the evidence's admissibility; and (2) the court's decision to

determine admissibility only after appellant took the stand. Appellant's first contention is patently meritless as the lower court held a pre-trial hearing at which appellant's counsel requested a ruling under *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973), as to the admissibility of appellant's prior convictions. Appellant's remaining three contentions concerning the court's refusal to definitively rule on the *Bighum* motion are equally without merit in light of *Commonwealth v. Bryant,* 247 Pa.Superior Ct. 386, 372 A.2d 880 (1977). In *Bryant,* after the Commonwealth had rested its case, the trial court stated that it intended to rule that evidence of the defendant's prior convictions was permissible but indicated that if the defendant took the stand, prompting the Commonwealth to attempt to impeach his credibility, that it would reconsider the tentative ruling. The Superior Court rejected the defendant's argument that a binding evidentiary ruling was required and stated:

> to hold that the trial judge must make a binding ruling on the admissibility of the convictions before the defense has presented any evidence would serve to remove the most crucial factor by which the judge is to be guided in making his ruling that being whether or not appellant has any means of presenting a defense other than by taking the stand himself.

*Id.,* 247 Pa.Superior Ct. at 392, 372 A.2d at 882. In the instant case, the court ruled tentatively on the evidence, reiterated its view after the Commonwealth rested, and left open the possibility of reconsideration after appellant took the stand. Accordingly, the lower court properly adhered to the procedure employed and upheld in *Bryant.*

Appellant also challenges the lower court's final decision to permit the Commonwealth to impeach appellant with evidence of his prior criminal activity. The trial judge, acting in his discretion, may permit the Commonwealth to introduce evidence of prior convictions, if they reflect on the defendant's veracity, after considering

> ... the age and nature of the prior crimes; the length of the criminal record; the age and circumstances of the defendant; the extent to which it is more important to search for truth in a particular case for the jury to hear the defendant's story than to know of a prior conviction. This last factor is of critical importance. Where the defendant has no other means by which to defend himself, it would be particularly unjust to subject him to the introduction of prior convictions. Or where the prior conviction is not critically important to the Commonwealth's case—e.g. where other adequate means of attacking defendant's credibility are available—exclusion of prior convictions is strongly indicated.

*Commonwealth v. Bighum, supra* 452 Pa. at 567, 307 A.2d at 263. *See Commonwealth v. Roots,* 482 Pa. 33, 38, 393 A.2d 364, 366 (1978).[6] Testimony at the pre-trial hearing on appellant's *Bighum* motion indicates that appellant had been sentenced on June 25, 1980, in Delaware, for several other robberies taking place within a nine month period from 1977 through 1978, when appellant was 24–25 years old. The hearing also revealed that the robberies had a similar "modus operandi," whereby "people of various business establishments were assaulted, money was relieved of them by force and through fear and intimidation. Several of the persons were locked in different places, rooms, trunks, et cetera." (N.T. March 26, 1981 at 8). In addition, appellant's counsel noted that there were two defenses; one, authorizing the chain of custody of Bonecutter's alleged letter, requiring appellant's taking the stand and the other, the alibi defense, not requiring appellant's participation. Counsel explained that both defenses were of equal value to appellant. (N.T. March 26, 1981). The Commonwealth, on the other hand, needed to impeach appellant's veracity as the only witnesses linking appellant to the crime were his alleged accomplices and the jury therefore had to make an important credibility determination. Based on

6. Robbery is a crime reflecting appellant's veracity, *Commonwealth v. Campbell,* 244 Pa.Superior Ct. 505, 368 A.2d 1299 (1966) (aggravated robbery a crime involving serious moral turpitude).

these factors, the lower court could reasonably have concluded that the balance of the Commonwealth's need for the evidence and its prejudice to appellant weighed more heavily in favor of the Commonwealth.

Appellant next alleges that the lower court placed the burden upon him to request that the court not permit evidence of prior convictions, rather than requiring the Commonwealth to explain its need for the evidence. We agree with appellant that at a *Bighum* hearing the burden of proof is on the prosecution to demonstrate that its need for evidence attacking the defendant's credibility overcomes the evidence's potential prejudice. *Commonwealth v. Roots, supra.* Here, however, the record supports the lower court's assertion that the burden was placed on the Commonwealth. The lower court asked appellant's counsel, "Now, what is the reason why this record should not be received in evidence on rebuttal if the defendant takes the witness stand and I assume that is what the Commonwealth's application is?" (N.T. March 26, 1981 at 6). Rather than placing the burden on appellant, the lower court attempted to elicit the various factors required for a determination of the evidence's admissibility that might possibly weigh in favor of barring the evidence. Accordingly, we find no merit in appellant's contention.

## C.

Appellant next alleges that the lower court erred in falsely characterizing Bonecutter's and Davidson's plea agreements. Specifically, he argues that by informing the jury that the agreements had not been accepted, rather than informing the jury they were conditional upon the co-conspirator's testifying, the lower court so misled the jury as to the facts that prejudice resulted. We do not find that the lower court's remark prejudiced the jury to the extent requiring a new trial. A remark to a jury is deemed prejudicial if "it is of such a nature of substance or delivered in such a manner that it may reasonably be said to have deprived the defendant of a fair and impartial trial." *Commonwealth v. Rhodes,* 272 Pa.Superior Ct. 546, 558,

416 A.2d 1031, 1037 (1979). Here, while Bonecutter was being questioned on direct examination about his agreement with the Commonwealth, the lower court interrupted the District Attorney and explained the plea agreement to the jury.

> So that the jury has this whole picture in proper perspective, with respect to the concept of plea negotiations or as it is sometimes called plea bargains, the plea negotiations or the plea bargains is something in which the Court does not participate. It is a decision initiated solely by the District Attorney's office.
>
> The District Attorney and counsel for the defendant in this particular case, Mr. Bonecutter, arrived at an arrangement which to them is mutually satisfactory. That arrangement is then presented to the Court in open Court for approval or disapproval.
>
> If the Court approves of the arrangement, the sentence is automatically imposed. The approval of the negotiated plea is not evidence [sic] by the Court unless and until the sentence is actually imposed. If the Court disapproves of the arrangement, the defendant is given the right if he chooses to do so, to withdraw the plea of guilty that he has tendered and then to stand trial.
>
> As you heard Mr. Bonecutter state whatever arrangements, if any, he has with the Court were not made with this Judge, they were made with another Judge. Whether or not Judge Wright will ultimately approve of the negotiated plea will be determined at the time sentence is imposed.
>
> As Mr. Bonecutter has stated, sentence has not yet been imposed. And I simply call this to your attention so that you might, if you have any preconceived ideas as to the negotiated plea in this case, have them possibly clarified in your mind.

(N.T. March 30, 1981 at 27–28). Far from prejudicing appellant, the lower court simply clarified the status of the agreement and thereby aided the jury's credibility determination by informing the jury exactly what Bonecutter and Davidson had already received and would receive as a result

of the plea agreement. We fail to see how this clarification misled or prejudiced the jury.

### D.

Appellant next contends that the lower court erred in refusing to grant a mistrial after the Commonwealth asked Bonecutter who had participated in the robbery of which appellant had been acquitted in January, 1981. The granting of a mistrial is within the discretion of the lower court and will not be reversed absent an abuse of that discretion. *Commonwealth v. Green,* 287 Pa.Superior Ct. 220, 429 A.2d 1180 (1981). Here, the lower court correctly refused to grant a mistrial. On cross-examination appellant's counsel questioned Bonecutter about his involvement in locking the victim of the earlier robbery in the car. On redirect, the District Attorney asked Bonecutter who had participated in the robbery. "If a defendant delves into what would be objectionable testimony on the part of the Commonwealth, the Commonwealth can probe further into the objectionable area." *Commonwealth v. McCloughan,* 279 Pa.Superior Ct. 599, 604, 421 A.2d 361, 363 (1980). By raising on cross-examination the earlier robbery and the similar action of placing the victim in the vehicle's trunk, the defense "opened the door" for the Commonwealth's question on redirect. Moreover, defense counsel on re-cross established that appellant had been acquitted in the earlier robbery. Thus, finding that appellant was not prejudiced by Bonecutter's testimony, we hold that the lower court properly denied the motion for mistrial.

### E.

Appellant alleges finally the lower court's error in refusing his motion for recusal. We find no merit in this contention. After appellant was acquitted by a jury on January 28, 1981, in a related robbery, the lower court allegedly informed the jury that it disagreed with the jury's verdict. On January 29 appellant's counsel motioned for the court to recuse itself in the instant case. Recusal may be appropriate where the trial judge feels unable to dispose

of the case fairly and without prejudice. *Commonwealth v. Conrad,* 241 Pa.Superior Ct. 324, 361 A.2d 421 (1976). However, where appellant is "tried by a jury which exercised sole responsibility for evaluating the testimony and arriving at a verdict ... the integrity of the fact finding process [is] insulated from any predispositions held by the trial judge." *Commonwealth v. West,* 270 Pa.Superior Ct. 301, 309, 411 A.2d 537, 541 (1979). In the instant case, the lower court refused appellant's motion for recusal noting that its comments on the earlier trial "related solely and exclusively to [the prior] prosecution" and that "[t]he Court has no idea of [appellant's] participation, if any, in any of the remaining charges." (N.T. January 29, 1981 at 7). We find the court's explanation of its reason for denying the motion to recuse, coupled with the fact that here, appellant was found guilty by a jury, sufficient to find no abuse of discretion in the lower court's presiding over appellant's trial.

Accordingly, having found no merit in appellant's contentions, we affirm the judgment of sentence entered by the lower court.

Affirmed.