J-S20039-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| WARREN OLIVER BLAIR, JR. | : | |
| | : | |
| Appellant | : | No. 1657 MDA 2017 |

Appeal from the Judgment of Sentence June 21, 2017
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s):  CP-38-CR-0001090-2016

BEFORE:  GANTMAN, P.J., OTT, J., and KUNSELMAN, J.

MEMORANDUM BY GANTMAN, P.J.:                    **FILED JULY 16, 2018**

Appellant, Warren Oliver Blair, Jr., appeals from the judgment of sentence entered in the Lebanon County Court of Common Pleas, following his jury trial convictions for indecent assault of a child, endangering the welfare of children, and corruption of minors.[1]  We affirm.

In its opinion, the trial court correctly set forth the relevant facts and some of the procedural history of this case.  Therefore, we have no reason to restate them.  We add that the court sentenced Appellant on June 21, 2017, to an aggregate term of eighteen (18) months' to five (5) years' imprisonment.  The court also required Appellant to register under the Sexual Offender Registration and Notification Act ("SORNA") at 42 Pa.C.S.A. §§

_____

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 4304(a)(1), 6301(a)(1)(i), respectively.

9799.10-9799.41, for life as a Tier III offender. Appellant timely filed a post-sentence motion on June 21, 2017, which the trial court denied on September 29, 2017. On October 26, 2017, Appellant, although still counseled, timely filed a *pro se* notice of appeal. That same day, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely filed a counseled Rule 1925(b) statement on November 14, 2017.

Appellant raises the following issue for our review:

> DID THE TRIAL COURT ABUSE ITS DISCRETION IN DENYING APPELLANT'S MOTION FOR A NEW TRIAL BASED ON THE VERDICT BEING AGAINST THE GREATER WEIGHT OF THE EVIDENCE?

(Appellant's Brief at 6).

Our standard of review for a challenge to the weight of the evidence is as follows:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the [trial] court's verdict if it is so contrary to the evidence as to shock one's sense of justice. Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

***Commonwealth v. Champney***, 574 Pa. 435, 444, 832 A.2d 403, 408 (2003), *cert. denied*, 542 U.S. 939, 124 S.Ct. 2906, 159 L.Ed.2d 816 (2004)

(internal citations omitted).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable John C. Tylwalk, we conclude Appellant's issue merits no relief. The trial court opinion comprehensively discusses and properly disposes of the question presented. (*See* Trial Court Opinion, filed September 29, 2017, at 2-11) (finding: Victim consistently maintained that sexual abuse incident took place in Appellant's trailer sometime during day while Victim's brother was in another room and all adult members of household except Appellant were gone; Victim described how Appellant placed his hand on Victim's penis, that Victim was not wearing pants or underwear, and that Appellant told Victim not to tell anyone about incident; Victim's testimony did not differ significantly from his prior statements at Child Advocacy Center interview and/or preliminary hearing; inconsistencies in Victim's testimony and his inability to recall certain prior testimony relate only to minor details, such as what specific room Victim's brother was in during incident, exact time of day, and how Appellant removed Victim's clothing; Victim was unable to recall some circumstances surrounding abuse incident, but Victim's testimony regarding assault itself remained unchanged; both of Victim's parents remarked that Victim did not like to talk about incident and became upset when asked about it; Victim's father also stated Victim became depressed and anxious when discussing incident for court purposes; jury credited Victim's testimony, and court finds nothing

"shocking" in jury's determination). The record supports the court's decision. Accordingly, we affirm Appellant's issue on the basis of the trial court's opinion.

Nevertheless, our Supreme Court declared SORNA unconstitutional, because it violates the *ex post facto* clauses of both the United States and Pennsylvania Constitutions. **Commonwealth v. Muniz**, ___ Pa. ___, 164 A.3d 1189 (2017), *cert. denied*, ___ U.S. ___, 138 S.Ct. 925, 200 L.Ed.2d 213 (2018). The **Muniz** court determined SORNA's purpose was punitive in effect, despite the General Assembly's stated civil remedial purpose. **Id.** at ___, 164 A.2d at 1218. Therefore, a retroactive application of SORNA to past sex offenders violates the *ex post facto* clause of the United States Constitution. **Id.** SORNA also violates the *ex post facto* clause of the Pennsylvania Constitution because it places a unique burden on the right to reputation and undermines the finality of sentences by enacting increasingly severe registration law. **Id.** at ___, 164 A.2d at 1223. Consequently, we elect to review the legality of Appellant's sentence *sua sponte*. **See Commonwealth v. Randal**, 837 A.2d 1211, 1214 (Pa.Super. 2003) (*en banc*) (stating appellate court can raise and review legality of sentence *sua sponte*).

Instantly, Appellant committed his offenses in September 2011. At that time, Megan's Law applied, which would have required Appellant to register as a sex offender for a period of ten (10) years. **See** 42 Pa.C.S.A. §

- 4 -

9795.1(a)(1). On December 20, 2011, the General Assembly enacted SORNA, which became effective on December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.10, 9799.41. The court sentenced Appellant on June 21, 2017, and required Appellant to register for life as a Tier III offender under SORNA. *See* 42 Pa.C.S.A. § 9799.14(d)(8). Appellant committed his offenses when Megan's Law was applicable, and Appellant is now facing a greater punishment; thus, application of SORNA violates the *ex post facto* clauses of the United States and Pennsylvania Constitutions. ***See Muniz, supra***. Accordingly, we vacate that portion of Appellant's sentence, which required him to comply with lifetime registration as a Tier III offender under SORNA, and remand for the trial court to instruct Appellant on his proper reporting requirements under Megan's Law.[2]

Judgment of sentence affirmed in part and vacated in part; case remanded for resentencing. Jurisdiction is relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 07/16/2018

---

[2] SORNA was recently amended by H.B. 631, 202 Gen. Assem., Reg. Sess. (Pa. 2018), Act 10 of 2018, in part, to address individuals who committed crimes before the effective date of SORNA. *See* 42 Pa.C.S.A. § 9799.55(a).

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :      NO. CP-38-CR-1090-2016
                                  :
                                  :
      v.                          :
                                  :
                                  :
WARREN BLAIR, JR.                 :

**APPEARANCES:**

**MEGAN RYLAND-TANNER, ESQUIRE**      **FOR THE COMMONWEALTH**
**SENIOR DEPUTY DISTRICT ATTORNEY**

**DAVID HOOVER, ESQUIRE**      **FOR WARREN BLAIR, JR.**
**THE HOOVER FIRM, LLC**

**OPINION, TYLWALK, P.J., SEPTEMBER 29, 2017.**

Defendant was charged with one count of Unlawful Contact or

Communication with a Minor, Indecent Assault of a Child, Endangering the

Welfare of Children, and Corruption of Minors[1] for an incident that occurred

sometime during the first two weeks of September 2011.  At the time, Defendant

was married to the mother of the minor male victim.  The incident occurred while

---

[1] Counts 1 through 4, 18 Pa.C.S.A. §6318(a)(1), 18 Pa.C.S.A. §3126(a)(7), 18 Pa.C.S.A. §4304(a)(1), and 18 Pa.C.S.A. §6301(a)(1)(i), respectively.

1

the victim and his brother were visiting their mother at the home Defendant shared with the boys' mother and Defendant's parents in Swatara Township.

Defendant was found guilty of all charges after a jury trial was conducted on March 7, 2017. After the jury rendered its verdict, we entered a judgment of acquittal on the Unlawful Contact charge in Count 1 for lack of evidence to support the verdict, entered the verdict on Counts 2, 3, and 4, and scheduled sentencing. On June 21, 2017, we sentenced Defendant to eighteen months to five years in a state correctional institution. Defendant has filed a Post-Sentence Motion asserting that the jury's verdict was against the weight of the evidence. Both parties have filed Briefs and the Motion is now before us for disposition.

Defendant claims that the verdict was against the weight of the evidence due to what he labels "rampant inconsistencies" in the victim's testimony during an interview with the Children's Advocacy Center in Pittsburgh ("CAC") and at the jury trial, along with his inability to remember specifics of his testimony at the Preliminary Hearing and the CAC interview. He argues that no reasonable jury could have believed the victim's testimony due to these inconsistencies and the victim's apparent lack of memory with regard to details surrounding this incident.

Challenges to the weight of the evidence and sufficiency of the evidence are discrete inquiries. *Commonwealth v. Davis,* 799 A.2d 860 (Pa.Super. 2002). A

2

motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain a verdict but contends that the verdict is against the weight of the evidence. *Id.* The decision whether to grant a new trial on this basis rests within the discretion of the trial court. *Commonwealth v. Holmes*, 663 A.2d 771 (Pa.Super. 1995). In reviewing the weight of the evidence, all the evidence should be examined. *Commonwealth v. Gonce*, 466 A.2d 1039 (Pa.Super. 1983).

A trial court should award a new trial on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative so that right may be given another opportunity to prevail. *Commonwealth v. Gonce, supra.* The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Simmons,* 662 A.2d 621, 630 (Pa. 1995). The function of the jury is to pass on the credibility of witnesses and determine the weight to be accorded to a particular piece of evidence. *Id.*

At the time of the jury trial, the victim, A.R., was fifteen years old. He testified that he was around eleven years old at the time of this incident.[2] At the trial, A.R. testified that prior to September 2011, he and his brother lived with his father and visited his mother every other weekend at the trailer she shared with Defendant and Defendant's parents. A.R. and his brother were on a visit with their mother on Labor Day weekend of 2011 and they remained there for approximately two weeks afterward. A.R. recalled that the weather was very stormy during that time. A.R. testified that at one point during that visit, Defendant used his hand to touch A.R. on top of the skin of his crotch area. At the time, A.R. was not wearing underwear or pants. Defendant ceased touching A.R. only after being asked to stop three times. Defendant did not want anyone to know about the incident and asked A.R. to keep it a secret. At trial, A.R. was unable to recall which room he and Defendant were in when this occurred. He believed that his brother was in the game room and that his mother was out shopping with Defendant's parents. After he returned to his father's house at the end of the visit, he never saw Defendant again.

The first person A.R. told about this incident was a staff member at a residential treatment center several years later. A.R. explained that he did not

[2] A.R. was born on April 13, 2001 and would have been ten years old in September 2011.

4

tell his mother or father right away because he was afraid and he didn't know what they would say.

On cross-examination, A.R. stated that he could not remember the day of the week when this occurred. He thought that it happened around mid-day. He remembered that he and his brother had been playing video games immediately beforehand. He described the incident as being about two minutes long. He could not remember who removed his clothing, but he remembered that he was standing up. He could not recall how Defendant was positioned. He remembered testifying at the Preliminary Hearing, but did not recall saying that he had removed his own clothing or that he did not know where his brother was at the time. He likewise did not remember telling his interviewer at the CAC that the incident occurred at 7:00 a.m., that he had removed his own clothes, or that his brother was in the bathroom.

A.R.'s father also testified at the trial. He explained that he and A.R.'s mother separated in 2006 and that he had primary physical custody of their two sons since separation, with the mother having visitation every other weekend. On the Sunday of Labor Day weekend of 2011, he had received a call that the boys would not be returning to live with him. He was living in Colombia County and could not get into the Courthouse to take any legal action to secure their return

5

due to severe flooding. The boys eventually returned to his home after being with their mother for approximately two weeks. Neither of his sons has had any contact with Defendant since September 2011.

When the boys returned home, A.R.'s father noted immediate changes in A.R.'s behavior. Prior to the visit, A.R. had willingly got out of bed and taken a shower before school every morning. When he returned, his father had to force him to get out of bed and had to practically "throw him in" to take a shower. Prior to the visit, A.R. had been a straight "A" student; however, his grades began to drop when he returned so that he was essentially failing academically. A.R. also began to exhibit aggressive behavior at school, throwing a chair in class in one episode. When questioned about the changes in his behavior, A.R. would reply "I don't know."

A.R. ended up being hospitalized five times with two long-term residential placements due to his aggression. During the second long-term placement, from November 9, 2011 to October 21, 2016, A.R. revealed Defendant's sexual abuse to a staff member at the residential facility. A.R.'s father noted that this was the first time his son offered any explanation for the change in his behavior. A.R. continued to exhibit these changes in behavior at the time of the trial. A.R.'s father noted that A.R. never told him what happened as he does not like to talk

6

about the incident. He also noted that A.R. becomes anxious and depressed when he is required to talk about it for Court purposes, but that his son has remained steadfast in his allegations since that time.

On cross-examination, A.R.'s father explained that A.R. has been diagnosed with oppositional defiance and is on the autism spectrum. He had a few minor issues prior to September 2011 for which he saw a psychologist. His hospitalizations and residential treatments were related to his aggression, which was never an issue before September 2011.

A.R.'s mother also testified at the trial. She explained that she was married to Defendant at the time of this incident but that they are now divorced. During the September 2011 visit, she did not observe any problems between Defendant and the boys. A.R. had been diagnosed with ADHD from at least 2008 when her sons first met Defendant. In 2011, A.R. was diagnosed with Asperger Autism. She explained that in September 2011 she was working at Golden Corral in Lebanon. On cross-examination, she recalled that Defendant was working nightshift at the time while she worked during the day so that Defendant would watch the boys for her while she worked. After she was informed of the allegations by A.R.'s stepmother, she tried to talk to A.R. about the incident but he became too upset.

Thomas Smith, of Lebanon County Children and Youth Services, testified that he was assigned to investigate the allegations against Defendant in late 2015 or early 2016. Smith remotely observed A.R.'s interview at the CAC and noted that A.R. was able to answer the interviewer's questions very specifically. On cross-examination, he recalled that during the CAC interview, A.R. had said that the incident occurred at around 7:00 a.m., that Defendant had removed A.R.'s clothing, that A.R.'s brother was in the bathroom, and that Defendant said he would stop if A.R. didn't say anything about the incident.

Norbert Brennan, of the Pennsylvania State Police, also testified at the trial. He was assigned to investigate this matter and had interviewed A.R.'s mother and father and Defendant's mother and father. He also conducted two interviews with Defendant. On both occasions, Defendant denied the accusations. Defendant had told Brennan that he had never been alone with A.R., that A.R.'s mother handled everything with the boys, and that he had never wrestled with, bathed, or tucked the boys in bed. He further denied that he looked after the boys while A.R.'s mother worked.

Bessie Blair, Defendant's sister, also testified at trial. Blair testified that she lived next door to Defendant's household in September 2011. She believed that the boys lived there for about six months at one point and that their mother had

never worked during that time. She noted that A.R.'s mother did not have a driver's license and did not drive when she lived with Defendant. For that reason, Defendant's father would drive her when she went shopping. Blair recalled that the boys always accompanied their mother on shopping trips because Defendant was working nightshift and slept during the day.

Defendant notes that A.R. was unable to recall his testimony from the Preliminary Hearing and certain statements he made during the CAC interview. Defendant further points out several discrepancies in the accounts given by A.R. at the CAC interview, the Preliminary Hearing, and during the trial. A.R. did not remember that at the CAC interview, he had stated that the assault occurred at around 7:00 a.m., that the Defendant had removed A.R.'s clothing, that his brother was in the bathroom during the assault, that Defendant had grabbed his penis, and that Defendant stopped only when A.R. promised to keep the assault a secret. At trial, A.R. testified that the assault occurred mid-day, that he could not remember how his clothing was removed, that his brother was in the game room during the assault, that Defendant "touched" his penis, and that Defendant ceased touching A.R. only after being told to stop three times.

After examining the evidence as a whole, we do not find the jury's verdict to be against the weight of the evidence. The testimony of a sexual assault

9

victim, if believed, is a sufficient basis to support a verdict of guilty.

*Commonwealth v. Shaffer,* 763 A.2d 411 (Pa. Super. 2000). A verdict of guilty is not against the weight of the evidence when a child victim of a sexual assault remains resolute regarding the core details of the sexual assault, but offers testimony which is mildly inconsistent with prior statements which is explained. *See, Commonwealth v. Willis*, 552 A.2d 682 (Pa. Super. 1988) (plurality opinion).

A.R.'s testimony related the major material facts regarding Defendant's actions at the jury trial and it is clear that his version of the main circumstances of the sexual assault are consistent with the accounts given previously. A.R. has maintained that the incident took place in Defendant's trailer sometime during the daytime while his brother was in another room and all the adult members of the household except Defendant were gone. A.R. described how Defendant placed his hand on A.R.'s penis, that A.R. was not wearing pants or underwear, and that Defendant told him not to tell anyone about the incident and to keep it a secret. This testimony did not differ significantly from that which was apparently given at the CAC interview and/or the Preliminary Hearing. The inconsistencies in his testimony and his inability to recall certain prior testimony relate only to minor details, such as what specific room his brother was in during the incident, the exact time of day, and how his clothing was removed. Although A.R. was

10

unable to recall some of the circumstances surrounding the incident, his testimony regarding the sexual assault itself was unchanged. It is understandable that A.R. may have forgotten some of his prior testimony. Both of A.R.'s parents remarked that A.R. did not like to talk about this incident and that he became upset when asked about it. A.R.'s father also indicated that A.R. became anxious and depressed when he had to discuss it for Court purposes.

It is within the province of the fact finder to determine the credibility of witnesses, including the weight to be given to their testimony. *Commonwealth v. W.H.M., Jr.,* 932 A.2d 155 (Pa. Super. 2007). A jury is free to believe all, part, or none of a witness' testimony. *Commonwealth v. Lee,* 956 A.2d 1024 (Pa. Super. 2008). Here, the jury obviously believed A.R.'s testimony and we find nothing "shocking" in their determination. Thus, we will deny Defendant's Post-Sentence Motion.