J-S24012-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| RICHARD ALLEN HAINLEY, | : | |
| | : | |
| Appellant | : | No. 1202 MDA 2015 |

Appeal from the Judgment of Sentence January 25, 2012
In the Court of Common Pleas of Lebanon County
Criminal Division at No(s): CP-38-0001662-2010

BEFORE:  GANTMAN, P.J., BOWES and MUSMANNO, JJ.

MEMORANDUM BY MUSMANNO, J.:                    **FILED JUNE 16, 2016**

Richard Allen Hainley ("Hainley") appeals from the judgment of sentence entered following his conviction of two counts of involuntary deviate sexual intercourse ("IDSI"), and one count each of indecent assault and endangering the welfare of children.[1]  We affirm.

In an Opinion filed on August 28, 2012, the trial court summarized the factual history underlying the instant appeal.  *See* Trial Court Opinion, 8/28/12, at 3-8.  We adopt the trial court's recitation of the facts for the purpose of this appeal.  *See id.*

Following a bench trial, Hainley was found guilty of the above-described charges.  On January 25, 2016, the trial court sentenced Hainley to an aggregate prison term of 10-25 years.  Hainley filed a post-sentence

---

[1] *See* 18 Pa.C.S.A. §§ 3123, 3126, 4304.

Motion, which the trial court denied. Thereafter, Hainley timely filed a direct appeal of his judgment of sentence.

On appeal, Hainley challenged, *inter alia*, his jury trial waiver colloquy as inadequate. The trial court conceded that there was no evidence of record regarding Hainley's waiver colloquy. Trial Court Opinion, 8/28/12, at 15. As a result, a panel of this Court vacated the trial court's Order denying Hainley's post-sentence Motion, and remanded the case for an evidentiary hearing as to whether Hainley's jury trial waiver was knowing and intelligent. *Commonwealth v. Hainley*, 75 A.3d 554 (Pa. Super. 2013) (unpublished memorandum at 14-15). Thereafter, the Pennsylvania Supreme Court denied Hainley's Petition for allowance of appeal. *Commonwealth v. Hainley*, 83 A.3d 167 (Pa. 2013).

On remand, the trial court conducted an evidentiary hearing as to whether Hainley had knowingly and intelligently waived his right to a jury trial. In an Opinion and Order entered on June 12, 2015, the trial court found that counsel for Hainley had, in fact, obtained a written jury trial waiver colloquy from Hainley, and that an oral colloquy had taken place. Trial Court Opinion, 6/12/15, at 17. The trial court ultimately found that

Hainley had knowingly and intelligently waived his right to a jury trial. *Id.* at 19. Accordingly, the trial court again denied Hainley's post-sentence Motion. *Id.* Hainley subsequently filed the instant timely appeal, followed by a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Hainley presents the following claims for our review:

I. Was the holding of an evidentiary hearing, **after** the 120 day time period for holding such a hearing, legal[,] and did the [trial court] err in holding the hearing and, furthermore, did a prior Superior Court panel err in remanding the matter to the [trial court] for a hearing?

II. Is [Hainley] entitled to a new trial where his purported waiver of [a] jury trial was not made in a knowing, intelligent and voluntary fashion[,] and where the trial record reflects that no colloquy of [Hainley] was undertaken by the Commonwealth or the [trial court], and where the [t]rial [c]ourt has conceded that there is no supporting documentation at all of [Hainley's] waiver?

III. Is [Hainley] entitled to an arrest of judgment on all charges[,] as the evidence is insufficient to sustain the verdict?

IV. Is [Hainley] entitled to a new trial[,] as the verdict is not supported by the greater weight of the evidence?

Brief for Appellant at 3 (emphasis in original).

Hainley first claims that a panel of the Pennsylvania Superior Court erred by remanding the matter for an evidentiary hearing as to whether he had waived his right to a jury trial. *Id.* at 21. Hainley contends that this Court erred when it ruled "that a hearing should occur, and especially erred if [the Court was] holding that the Commonwealth was, indeed, **entitled** to

an evidentiary hearing." *Id.* (emphasis in original). According to Hainley, this Court's ruling would, in effect, extend the post-sentence motion time limit beyond 120 days, and the Court has no authority to do so. *Id.* at 21-22.

"It is axiomatic that a three-judge panel is bound by previous panel opinions[,] unless overruled by this Court sitting *en banc*, our Supreme Court, or the United States Supreme Court." *Commonwealth v. Pepe*, 897 A.2d 463, 465 (Pa. Super. 2006) (citation omitted). Because we cannot reconsider the propriety of this Court's prior Order, we cannot grant Hainley relief on this claim. *See id.*

Hainley next challenges the trial court's determination that he knowingly and voluntarily waived his right to a jury trial. Brief for Appellant at 25. According to Hainley, the record developed at the evidentiary shows that there was no oral or written colloquy at the time he purportedly waived his right to a jury trial. *Id.* In addition, Hainley argues, the record does not support the prosecutor's claim that there was, in fact, a colloquy. *Id.* Hainley directs our attention to the testimony of his counsel, Allan L. Sodomsky, Esquire ("Attorney Sodomsky"). *Id.* at 27-28. According to Hainley, Attorney Sodomsky never asked Hainley whether he "wanted" a jury trial. *Id.* at 27. Further, Hainley points out Attorney Sodomsky's testimony that he was uncertain whether he had clearly explained the differences between a bench and jury trial to Hainley. *Id.* at 28. Hainley

also directs our attention to Attorney Sodomsky's testimony that, while he explained "all that stuff" to Hainley, Attorney Sodomsky did not believe that written documents were necessary, as they were repetitive. *Id.*

In addition, Hainley relies upon the testimony of Arthur Guistwite ("Guistwite"), who testified that he never saw Attorney Sodomsky give Hainley an explanation of the rights that Hainley would relinquish upon proceeding to a bench trial. *Id.* According to Hainley, Guistwite testified that, "[w]hile counsel explained that there would not be twelve jurors, he did not explain the differences in how a judge or a jury might reach and return a verdict." *Id.* Hainley further relies on Guistwite's testimony that he did not see any forms that Hainley would have filled out. *Id.*

Hainley also directs our attention to his own testimony, in which he acknowledged that the idea of a bench trial was first discussed with him on the first day of trial. *Id.* at 29. Hainley points out his testimony that, while he wanted a jury trial, he was "scared," and "went along with his attorney." *Id.* According to Hainley, "he did not sign any waiver forms, nor was he questioned by the [trial court] on the waiver." *Id.* Hainley argues that, reading the testimony of all of the witnesses as a "totality," the record supports his claim that he did not knowingly, intelligently or voluntarily waive his right to a jury trial. *Id.* at 32.

Waiver of the right to a jury trial is governed by Pa.R.Crim.P. 620:

In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge

of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge and the defendant's attorney as a witness.

Pa.R.Crim.P. 620. The colloquy conducted by the trial court must apprise the defendant of the following essential elements of a trial by jury: that the jury would be selected from members of the community; that the verdict must be unanimous; and that the defendant would be allowed to participate in the selection of the jury. *Commonwealth v. Shablin*, 524 A.2d 511, 513 (Pa. Super. 1987). In deciding whether a jury waiver is valid, we employ a totality of the circumstances analysis that examines, among other things, the extent to which counsel and client discussed the waiver. *Commonwealth v. O'Donnell*, 740 A.2d 198, 219 (Pa. 1999); *Commonwealth v. DeGeorge*, 485 A.2d 1089, 1091 (Pa. 1984).

Applying the totality of the circumstances test in the instant case, the record supports the trial court's analysis and determination that Hainley's waiver was knowing, voluntary and intelligent. *See* Trial Court Opinion, 6/12/15, at 4-19. We agree with the sound reasoning of the trial court, and affirm the trial court's resolution of this claim on the basis of its June 12, 2015 Opinion. *See id.* We additionally observe the following.

Hainley points out the trial court's repeated references to the PCRA, and argues that the trial court applied the wrong standard when addressing

his jury trial waiver. Brief for Appellant at 34-35. Our review of the trial court's Opinion discloses that the trial court improperly referred to the hearing on remand as a "PCRA" proceeding. **See**, **e.g.**, Trial Court Opinion, 6/12/15, at 6-7 (citing to the "PCRA Hearing"), 10 (referring to testimony at the "PCRA hearing"). Notwithstanding, it is clear from the trial court's Opinion that it applied the appropriate burden of proof and law in addressing Hainley's claim. **See id.** at 4 (applying a totality of the circumstances standard in determining whether the waiver is valid), 4-5 (stating that it is the Commonwealth's burden to affirmatively establish a jury trial waiver), 18 (stating that the Commonwealth "has fulfilled its burden of proving a knowing and voluntary waiver on the part of [Hainley]."). Accordingly, the trial court's mischaracterization of the hearing does not entitle Hainley to relief.

In his third claim, Hainley challenges the sufficiency of the evidence underlying his verdict. Brief for Appellant at 40. Hainley points out that "[n]o one was present when the child was allegedly touched by [Hainley]." **Id.** Therefore, Hainley argues, the testimony of the other witnesses "is only as reliable as the young child in the instant matter." **Id.** Hainley directs our attention to alleged contradictions in the child's testimony, and observes that the child failed to report the March 2009 incident until October 2010. **Id.** Hainley also details incidents involving the child's mother, who, following their breakup, allegedly stalked Hainley, his girlfriend and his

- 7 -

associates. *Id.* at 40-41. Hainley further asserts that there is no evidence of a change in the child's behavior immediately following the first incident. *Id.* at 43. Accordingly to Hainley, "at the end of the day, all that the Commonwealth can produce is the bald allegations of the child." *Id.*

In reviewing a challenge to the sufficiency of the evidence,

> "we must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. Brown*, 2012 PA Super 150, 52 A.3d 320, 323 (Pa.Super. 2012). Critically important, we must draw all reasonable inferences from the evidence in favor of the Commonwealth as the verdict-winner. *Commonwealth v. Hopkins*, 2013 PA Super 122, 67 A.3d 817, 820 (Pa.Super. 2013). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Brown, supra* at 323. Of course, "the evidence established at trial need not preclude every possibility of innocence and the fact-finder is free to believe all, part, or none of the evidence presented." *Id.*
>
> The Commonwealth can meet its burden "by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact[-]finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." *Id.* It is improper for this Court "to re-weigh the evidence and substitute our judgment for that of the fact-finder." *Id.* Additionally, "the entire record must be evaluated and all evidence actually received must be considered." *Id.*

*Commonwealth v. Watley*, 81 A.3d 108, 113 (Pa. Super. 2013).

In its August 28, 2012 Opinion, the trial court addressed Hainley's challenge to the sufficiency of the evidence, and concluded that it lacks merit. *See* Trial Court Opinion, 8/28/12, at 9-12. We agree with the sound

reasoning of the trial court, and affirm on the basis of its Opinion with regard to this claim. *See id.*

In his fourth claim, Hainley challenges the verdict as against the weight of the evidence. Brief for Appellant at 46. In support, Hainley states that

> what the case comes down to is the child's testimony versus [Hainley's] testimony; [Hainley's] lack of prior inculpatory statements; the gross lack of corroborating evidence; and the seemingly complete support of the community, all attesting to the good character of [Hainley].

*Id.* at 46-47. Hainley points out the context of the child's first allegation of abuse. *Id.* at 48. According to Hainley, at the time of the child's first allegation, she was being "chastised by her mother for inappropriate behavior." *Id.* Hainley posits that, "in order to deflect her mother's disapproval[, the child] made up a story that would upset her mother and defect her mother's anger elsewhere." *Id.*

A motion for a new trial based upon a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013).

> A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

***Id.*** at 1055 (citations and internal quotation marks omitted). Our standard of review of a weight claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

***Id.*** (citations omitted) (quoting ***Commonwealth v. Widmer***, 744 A.2d 745, 753 (Pa. 2000)).

In its August 28, 2012 Opinion, the trial court addressed Hainley's claim and concluded that it lacks merit. ***See*** Trial Court Opinion, 8/28/12, at 13-14. Upon our review of the record, we discern no abuse of discretion by the trial court in this regard. Accordingly, we affirm on the basis of the trial court's Opinion with regard to this claim. ***See id.***

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/16/2016

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA      :      NO. 1662-2010

v.                                :

                                  :

RICHARD ALLEN HAINLEY            :

**APPEARANCES:**

**COURTNEY HAIR, ESQUIRE**                **FOR THE COMMONWEALTH**
**ASSISTANT DISTRICT ATTORNEY**

**DAVID RUDENSTEIN, ESQUIRE**             **FOR RICHARD ALLEN HAINLEY**

**OPINIION, TYLWALK, P.J., JUNE 11, 2015.**

Defendant was charged with two counts of Involuntary Deviate Sexual

Intercourse, one count of Indecent Assault, and one count of Endangering the

Welfare of Children.[1]  He was scheduled for a jury trial to be held during the

October 3, 2011 Criminal Jury Trial term.  After he appeared for the Call of the List

on October 3, 3011, his jury trial was scheduled for October 5, 2011.

On October 3, 3011, defense counsel, Allen Sodomsky, Esquire

("Sodomsky") notified the Court and the Commonwealth that Defendant might

---

[1] 18 Pa.C.S.A. §3123, 18 Pa.C.S.A. §3126, and 18 Pa.C.S.A. §4304, respectively.

1

desire to proceed with a bench trial rather than a jury trial. After being given time for consultation with Defendant, Sodomsky reported back to the Court that Defendant preferred a bench trial. The Commonwealth attorney, Megan Ryland-Tanner, Esquire ("Ryland-Tanner") indicated that she would not object only if the bench trial took place on October 5, 2011. Despite the fact that bench trials are not normally conducted during Criminal Jury Trial Term, we agreed to conduct Defendant's bench trial on that date. After the bench trial, we found Defendant guilty of all charges by Order issued October 6, 2011. On January 25, 2012, we sentenced Defendant to eleven (11) to twenty-five (25) years and provided him with notice of his Megan's Law registration requirements. On February 1, 2012, Defendant filed a Post-Sentence Motion challenging the sufficiency and weight of the evidence, the admission of testimony from the Tender Years hearing and the validity of his waiver to his right to a jury trial.

Both parties filed their Briefs and our decision was due June 14, 2012. In its Brief, the Commonwealth sought a hearing on the issue of Defendant's waiver to have a jury trial due to the absence of any documents or indication of an oral colloquy of Defendant's waiver in the record. Because we were likewise unsuccessful in locating any supporting documentation of Defendant's waiver, we were unable to rule on that issue, and instead scheduled a hearing to aid us in

2

making our determination. Because we were beyond the time limit for rendering our decision, Defendant objected to the scheduling of the hearing and instead notified this Court of his intention to file a Notice of Appeal. (See Case Correspondence dated June 11, 2012) Hence, we entered an Order on June 14, 2012 deeming the Post-Sentence Motion denied by operation of law. Defendant filed a Notice of Appeal to the Superior Court of Pennsylvania on June 29, 2012. On August 28, 2012, we issued an Order and Opinion in which we recommended to the Superior Court that the matter be remanded on the waiver issue so that we could proceed with an evidentiary hearing in order to determine the circumstances of Defendant's waiver of his right to a jury trial. By Order filed April 15, 2013, the Superior Court remanded the matter to us for a hearing on the waiver issue and declined to rule on Defendant's other asserted bases for relief. The Superior Court denied Defendant's Application for Reconsideration/Reargument on June 21, 2013 and the Supreme Court of Pennsylvania denied his Petition for Allowance of Appeal on December 23, 2011. We conducted a hearing on the Post-Sentence Motions on July 17, 2014. A transcript of that hearing has been lodged, the parties have submitted Briefs, and the matter is now before us for resolution.

3

With regard to a criminal defendant's waiver of his right to a jury trial, Pa.R.

Crim. P. 620 provides:

**Rule 620. Waiver of Jury Trial**

In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620. In *Commonwealth v. Foreman,* 797 A.2d 1005 (Pa. Super.

2002), the Court explained:

The colloquy conducted by the trial court must apprise the defendant of the following essential elements of a trial by jury: that the jury would be selected from members of the community, that the verdict must be unanimous, and that the defendant would be allowed to participate in the selection of the jury. *Commonwealth v. Shablin,* 362 Pa.Super. 289, 524 A.2d 511 (1987). Our Supreme Court ruled that in deciding whether a jury waiver is valid, we must employ a totality of the circumstances analysis which examines, among other things, the extent to which counsel and client discussed the waiver. *Commonwealth v. DeGeorge,* 506 Pa. 445, 449, 485 A.2d 1089, 1091 (1984). Therefore, we are compelled to go beyond the colloquy and examine the record as a whole and the circumstances surrounding Appellant's waiver of his right to a jury trial in order to determine whether that waiver was voluntary. *Id.*

797 A.2d at 1015. The waiver of a jury trial is a personal right of the accused. The

4

prosecution has the burden of affirmatively establishing waiver. **Commonwealth v. Morin,** 383 A.2d 832 (Pa. 1978). The basic ingredients of a jury trial, understanding of which are necessary to a knowing and intelligent waiver, are the requirements that the jury be chosen from the community, that the verdict be unanimous, and that the defendant be allowed to participate. **Commonwealth v. Williams**, 447 A.2d 963, 301 Pa.Super. 271, (Pa. Super. 1982). Such a waiver is to be approved by the court. Before it may be said that defendant has knowingly and intelligently waived the right to a jury trial, the on-the-record colloquy must show that the defendant fully comprehended the significance of the right being waived. **Id.** If the record is insufficient, the trial court may conduct an evidentiary hearing to determine whether the totality of the circumstances indicates that Defendant's waiver of trial by jury was knowing and intelligent. **Commonwealth v. DeGeorge,** 485 A.2d 1089, 1091 (Pa. 1984).[2]

Sodomsky testified that prior to listing this case for trial, he had numerous lengthy meetings with Defendant and his family in his law office. He explained that during those meetings, they discussed whether Defendant should opt for a

---

[2] In **DeGeorge**, the record contained only a document signed by Defendant which indicated that he "pleads not guilty and ... waives a jury trial and elects to be tried by a judge without a jury." Finding that it had no way to determine the validity of the waiver, the Supreme Court of Pennsylvania remanded the case to the trial court for an evidentiary hearing to determine whether the waiver was knowing and intelligent.

5

jury trial or a bench trial. Sodomsky explained that over the course of his twenty-three-year practice in criminal law, he had developed a standard speech regarding the details and attributes of both jury trials and bench trials and that he gave this speech to Defendant. He testified that he "absolutely" advised Defendant of the differences between the two types of proceedings, his rights regarding a jury trial, and how a jury trial worked  (N.T. PCRA Hearing, 7/17/14 at 11-12)  He informed Defendant that a unanimous decision of twelve people was necessary for a jury's verdict, that there existed the possibility of a hung jury, and that with a bench trial, only the decision of the one judge was necessary. He indicated to Defendant that emotion would not be a factor with a bench trial. Sodomsky noted that Defendant seemed to have no difficulty comprehending this information and that he never indicated that he did not understand anything. Sodomsky stated his opinion that Defendant was very intelligent and had often "called the shots" throughout trial preparation. (N.T. PCRA Hearing, 7/17/14 at 12) Sodomsky had explained to Defendant that there was a good chance of getting "level footing" if the case was assigned to a certain Courtroom. (N.T. PCRA Hearing, 7/17/14 at 21)

Sodomsky explained that the decision whether to proceed with a jury trial or a bench trial was a tactical decision. Because all judges are different, he could not give a good opinion about which was best until he knew which Lebanon

6

County judge would be assigned to the case. Due to Lebanon County procedure, he would not know which Judge would hear the case until the morning of October 3, 2011 after Call of the List. He explained that he was prepared to select a jury and proceed with a jury trial until that time.

Sodomsky explained that once he learned which Judge would preside over Defendant's case on October 3, 2011, he discussed with Ryland-Tanner and the Court the possibility of having a bench trial. He felt that the assigned Judge would give Defendant "a fair shake." The Court gave him some time to discuss this possibility with Defendant. Sodomsky discussed this option with Defendant outside of the Courtroom. Sodomsky recalled that his employee, Robin Wertz,[3] Defendant, and Defendant's girlfriend, mother and two sisters were involved in the conversation. Sodomsky advised Defendant that he believed a bench trial was in his best interest. This opinion was based on a consideration of the nature of the sex charges and the type of evidence which would be presented by the Commonwealth, which included the testimony of the young female victim. Sodomsky believed that if the evidence was believed, it was sufficient to substantiate a verdict in favor of the Commonwealth. Defendant and his family

---

[3] Wertz was Sodomsky's office manager and a jury consultant who was there to help him pick a jury for Defendant's case.

had a lot of questions. Sodomsky and Wertz answered all of their questions. Defendant told Sodomsky that he wanted the best chance at being found not guilty. Sodomsky insisted that he again went over with Defendant the differences between a jury trial and a bench trial and the rights he would give up by proceeding with a bench trial at that time. Sodomsky also insisted that the ultimate decision to proceed with a bench trial was made by Defendant.

Once Defendant had indicated his decision to proceed with a bench trial, Sodomsky believed that he obtained the paperwork for Defendant's written waiver. Although he did not know who routinely filled out the paperwork for such waivers, he noted that he would have had Defendant sign the written waiver form on that morning. He did not have a copy of the written waiver in his own file, noting that he would not have kept a copy of the form. He knew that the written form was required. He noted that prior to that time, he had arranged jury trial waivers for clients in Lebanon County many times and that he would have obtained the written form in this case. He also believed that the judge conducted oral questioning regarding the waiver in Court; however, he had no specific recollection of the questions asked and was not sure whether the Court's discussion was recorded.

8

Sodomsky further noted that Defendant appeared to be nervous on the morning of the bench trial. He never asked Sodomsky about the lack of a jury at the Tender Years Hearing which preceded the trial or prior to or during the bench trial itself. Sodomsky insisted that had Defendant ever indicated to him that he wanted a jury trial, even after the proceedings had begun, he would have immediately stopped the proceedings and related that information to the Court. Defendant never told him that he did not want a bench trial.

Robin Wertz ("Wertz"), Sodomsky's office manager and jury consultant, testified that she had been involved with Defendant's case since the point when their office received discovery a number of months prior to the trial date. She had been present during the meetings at Sodomsky's law office and was involved in discussions with Sodomsky and Defendant about whether to have the case decided by a judge or a jury. She remembered Sodomsky telling Defendant about how a jury trial was conducted and explaining the differences between a jury trial and a bench trial. Although she knew that this could be an emotionally-charged case due to the nature of the charges and the testimony of the little girl, she never advised against having a jury trial.

Wertz was present at Court on October 3, 2011 to help Sodomsky with jury selection. She testified that when Sodomsky came out of the Courtroom, he was

9

pleased with the Courtroom assignment. She and Sodomsky discussed the possible emotional impact the testimony of the young female victim might have on a jury and discussed the option of proceeding with a bench trial with Defendant and his family members. Sodomsky went over with Defendant and his family members the differences between the two proceedings, the fact that Defendant had the right to pick a jury and proceed with a jury trial, and how that whole process would work. Sodomsky indicated to the group that he felt the assigned Judge would keep emotion out of his decision and would pay attention to the facts. Wertz did recall Sodomsky explaining to Defendant the difference between a bench trial and a jury trial and emphasizing to him that he had the right to go before a jury. Sodomsky never told Defendant that he had already decided to proceed with a bench trial. Wertz heard Defendant say that he would go with a bench trial.

Ryland-Tanner, the Commonwealth attorney who prosecuted this case, also testified at the PCRA hearing. Ryland-Tanner explained that on the morning of October 3, 2011, Sodomsky approached her about the possibility of having a bench trial. Ryland-Tanner indicated that this was the first time Sodomsky mentioned having a bench trial in this case. When Sodomsky told her that Defendant desired a bench trial, she told him that she would not object as long as

10

the bench trial could be conducted during that trial week. She recalled that Sodomsky handed her a completed, signed, and initialed waiver form. She also recalled the judge engaging Defendant in an oral colloquy and that once that was completed, Defendant indicated he wished to waive his right to a jury trial. Ryland-Tanner also testified that during the Tender Years Hearing, bench trial and Sentencing, she never heard Defendant say anything about wanting a jury trial. Ryland-Tanner recalled that Defendant had testified during the bench trial and never indicated any concerns or confusion about the process. Also, after Sentencing, Defendant voiced no concerns when the Court asked him if he had any problems or concerns with his legal representation.

On cross-examination, Ryland Tanner admitted that neither the written waiver nor the oral colloquy appear in the record of this case. However, she noted that this was an uncommon situation and that she would not have proceeded to a bench trial without a waiver. She indicated that she had searched her file, had called Sodomsky about getting a copy of the waiver, had checked the Clerk of Courts file, and had looked for a transcript of the oral colloquy.

When asked whether anything out of the ordinary had occurred in Court on October 3, 2011, Ryland-Tanner noted that there were no other people present in the Courtroom during the Court's oral colloquy. She could not recall whether a

11

member of the Clerk of Court's office or a stenographer were still present at that point as the Courtroom had already been cleared out after Call of the List was over. Ryland-Tanner specifically recalled being handed the written waiver and it going up to the Judge. She specifically remembered the conversation going back and forth between the Judge and Defendant and that once that conversation was completed, the Judge told those present that he would see them in a couple of days. Ryland-Tanner was adamant that she would not have proceeded to a bench trial without ensuring that a written waiver had been obtained.

Marian Hainley, Defendant's mother, also testified at the hearing. She explained that she had helped her son obtain the services of Sodomsky and that she had gone to Sodomsky's office with her son to discuss the case on two or three occasions. She claimed that she never heard any discussion of the choice between a jury and a judge trial or how a jury trial would be conducted.

Mrs. Hainley had also been present on October 3, 2011. She recalled that Sodomsky came out of the Courtroom and said "we got the judge we wanted," but did not explain what he meant by that statement. When he said he wanted to go with a bench trial, she and Defendant both told him "no." After that, Sodomsky left them and returned to the Courtroom. She did not go into the Courtroom. She never saw her son sign any form and she did not remember the

12

Judge asking him any questions about whether he wanted a jury trial. On the date of trial, she remembered that she and her son came with the assumption that Sodomsky would be picking jurors. When she asked Sodomsky what was going on, she remembers that he told her that he thought they should go with a bench trial and "that was that."

Defendant also testified at the hearing. He testified that the first time Sodomsky spoke to him about whether to have a jury trial or a bench trial was the first day he was in the Courtroom for trial. During their previous meetings, the differences between a bench trial and jury trial were brought up vaguely and briefly, but not really discussed in depth. He never authorized Sodomsky to discuss the possibility of having a bench trial with the Commonwealth or the Court.

On October 3, 20122, Sodomsky came out of the Courtroom and told him there were some things they had to discuss. During their ten-minute discussion, Sodomsky told him that a bench trial was in his best interest but did not discuss the differences between the two types of proceedings. When Sodomsky asked him for his decision, he told him he still wanted a jury trial. He insisted that he never changed that position and never told Sodomsky to make the decision on his own.

13

Defendant claimed that he only realized that he wasn't having a jury trial on October 5, 2011 when the bench trial began and he saw that there was no jury. When he asked Sodomsky what was going on, Sodomsky responded that they were having a bench trial. Defendant explained that at that point he was scared and intimidated and that he just went along with whatever his attorney told him to do. He insisted that he was never given any form to sign about his jury trial rights and that the Judge never questioned him about whether he wanted a jury trial or a bench trial. He explained that he felt Sodomsky had forced him into going forward with the bench trial.

Arthur Geistwhite, Defendant's brother-in-law was the final witness to testify at the hearing. He had been present at one of the office meetings and did not recall having any discussions regarding judge versus jury trial at that time. He was also present outside the Courtroom on October 3, 2011 with his wife and Defendant's girlfriend and other family members during the conversation with Sodomsky. He testified that he had also expected Defendant to have a jury trial, but Sodomsky said that Defendant had the opportunity to have a bench trial instead and that he recommended the bench trial. He testified that Sodomsky did not have any discussion about what rights Defendant would be giving up. However, he recalled him talking about selecting twelve jurors from the

14

community and that Defendant would not do that at a bench trial. He did not explain anything about how the Judge would reach his verdict. He never saw Sodomsky give Defendant any forms to sign or have him go into the Courtroom.

It is clear that in this case, the record does not satisfy the requirements of Rule 620. Despite many efforts to locate them, the record does not contain the written waiver form or any reference to or other indication of the oral colloquy. Defendant and his family members claim that Defendant was never given anything to sign and that he was never engaged in a discussion of his waiver with the Judge. Defendant stated that his waiver was not addressed when he appeared on October 5, 2011. He insisted that he still thought he was going to have a jury trial on that date and that he just went along with what his attorney had decided on his own. Regardless, we believe that the evidence adduced at the PCRA hearing indicates that under the totality of the circumstances, Defendant knowingly and voluntarily waived his right to a jury trial.

Sodomsky and Wertz both testified that Defendant, along with any family members accompanying him, was informed on numerous occasions of the rights and procedures involved in a jury trial, the option of having a bench trial, and the differences between the two proceedings. Both also testified that Defendant made the decision himself to proceed with a bench trial.

15

We find Sodomsky's testimony of his actions in this regard to be credible. A PCRA court may rely upon a trial counsel's description of his usual practices and procedures as circumstantial evidence of his having acted in compliance with constitutional minimums in a particular case. See, ***Commonwealth v. Basemore,*** 744 A.2d 717, 736, n. 19 (Pa. 2000); ***Commonwealth v. Dupert,*** 725 A.2d 750, 755 (Pa. 1999). A trial counsel's lack of recollection regarding specifics of a case in a PCRA proceeding is not contradictory to testimony that he performed certain acts on behalf of his client. See, ***Commonwealth v. Chmiel,*** 30 A.3d 1111 (Pa. 2011). Here, Sodomsky testified that he understood that the written waiver was required and that he routinely had his clients execute that form when waiving a right to a jury trial in Lebanon County. He noted that since this form was required, he would have ensured that Defendant executed one. We believe this testimony of his normal procedure is indicative that he proceeded in this manner in this case.

Also, although Sodomsky was unable to recall the specific details of Defendant's execution of the written form, he was confident that Defendant had, in fact, signed one. He testified that he was unable to recall where he got the form or any details regarding Defendant's execution of it. He also believed that the Court engaged in an oral colloquy with Defendant, although he could not

16

recall the specific questions posed to Defendant by the Court. We do not find that his lack of details is contradictory to his testimony of his general memory of the form being executed and the oral colloquy being conducted.

We also find Ryland-Tanner's recollection of the events of this case to be credible. Ryland-Tanner described the Courtroom situation at the time she received the written waiver and the Court questioned Defendant. She specifically recalled that the Courtroom had cleared out after Call of the List and that no others remained when Sodomsky and Defendant came in after their conference. Ryland-Tanner specifically remembered being handed the written waiver form by Sodomsky. She was also present and remembered the Court questioning Defendant regarding his waiver. Although the whereabouts of the written waiver is unknown, and there is no transcript of the oral colloquy, we are satisfied that these two experienced attorneys did, in fact, make certain that a written waiver was obtained from Defendant and that the oral colloquy did actually occur despite the fact that they do not appear of record as required by Rule 620.[4]

---

[4] This jurist also recalls Defendant executing a written waiver form and participating in an oral colloquy. However, since a judge may not rely on facts which he remembers from a prior proceeding but which are not part of the record in the case before him, *Commonwealth v. A.C. Cavell,* 213 A.2d 98 (Pa. Super. 1965), we may not take this recollection into account in resolving this matter. For this reason, the Court had an employee of the Court conduct a page-by-page examination of the Clerk of Court's physical files of all cases listed for trial during the October 2011 Criminal Jury Trial Term for the missing written waiver, on the chance that it had found its way into the wrong

Moreover, regardless of the absence of the written waiver and a transcript memorializing the oral colloquy from the record, we believe that other testimony adduced at the PCRA hearing, in addition to that of Sodomsky and Ryland-Tanner, supports a finding the Defendant knowingly and voluntarily waived his right to a jury trial. Sodomsky and Wertz both testified that Sodomsky had given Defendant all the necessary information and had discussed the subject of having a bench trial versus a jury trial many times prior to and on October 3, 2011. Wertz heard Defendant specifically tell Sodomsky that he would go with a bench trial after the discussion outside of the Courtroom on October 3, 2011. Also, Defendant went through the Tender Years Hearing, bench trial and Sentencing without uttering a word about having wanted a jury trial. We do not discredit the testimony of Defendant's family members; however, we must note that none of them was present at all times during all proceedings and for all of Defendant's discussions with Sodomsky.

Based on this evidence, we conclude that the Commonwealth has fulfilled its burden of proving a knowing and voluntary waiver on the part of Defendant.

---

casefile when it was submitted in open Court. This search failed to yield this elusive document. A copy of that trial list is attached hereto and incorporated by reference as Exhibit "1."

18

The testimony established that Sodomsky thoroughly discussed the option of having a bench trial rather than a jury trial, with its attendant rights, throughout his representation of Defendant. Defendant made his own decision to proceed with a bench trial. Sodomsky and Ryland-Tanner followed the proper procedure to effectuate a valid waiver. The Court discussed the waiver with Defendant. Under the totality of these circumstances, we find sufficient basis upon which we can conclusively determine that Defendant himself chose to give up his jury trial rights and to proceed with a bench trial instead.

For these reasons, we determine that Defendant's waiver of his Constitutional right to a jury trial was valid. Therefore, we must deny Defendant's request for collateral relief.

19

IN THE COURT OF COMMON PLEAS OF LEBANON COUNTY
PENNSYLVANIA

CRIMINAL DIVISION

COMMONWEALTH OF PENNSYLVANIA    :    NO. 1662-2010
                                     :

v.                                    :
                                   :

RICHARD ALLEN HAINLEY             :

**APPEARANCES:**

**MEGAN RYLAND TANNER, ESQUIRE**     **FOR THE COMMONWEALTH**
**DEPUTY DISTRICT ATTORNEY**

**DAVID RUDENSTEIN, ESQUIRE**     **FOR RICHARD ALLEN HAINLEY**

**Opinion, Tylwalk, P.J., August 28, 2012**

On October 6, 2011, Defendant was convicted of two counts of Involuntary

Deviate Sexual Intercourse, one count of Indecent Assault and one count of

Endangering the Welfare of Children after a bench trial was held on October 5,

2011. Prior to the bench trial, we had conducted a Tender Years[1] hearing on

October 5, 2011 as the victim in this case, T.L., was five years old at the time of

the incident and eight years old at the time of trial. On January 25, 2012,

Defendant was sentenced to ten to twenty-five years incarceration in a state

---

[1] See, 42 Pa.C.S.A. §5985.1, the Tender Years exception to the hearsay rule.

1

correctional institution and provided with notification of his Megan's Law registration requirements.

On February 1, 2012, Defendant filed a Post-Sentence Motion challenging the sufficiency and weight of the evidence and the admission of testimony from the Tender Years hearing in the bench trial. In addition, Defendant challenged the validity of his waiver to his right to a jury trial.

Both parties filed their Briefs and our decision was due June 14, 2012. In its Brief, the Commonwealth sought a hearing on the issue of Defendant's waiver to have a jury trial due to the absence of any documents or a colloquy indicating that waiver in the record. Because we were likewise unsuccessful in locating any supporting documentation of Defendant's waiver, we were unable to rule on that issue, and instead scheduled a hearing to aid us in making our determination. Because we were beyond the time limit for rendering our decision, Defendant objected to the scheduling of the hearing and instead notified this Court of his intention to file a Notice of Appeal. (See Case Correspondence dated June 11, 2012) Hence, we entered an Order on June 14, 2012 deeming the Post-Sentence Motion denied by operation of law. Defendant filed a Notice of Appeal on June 29, 2012 and this Opinion is directed thereto.

## 1. Factual Background

At the Tender Years hearing, the Commonwealth first presented the testimony of K. L. the mother of the young victim, T.L.   K.L. related that T.L. was currently eight years old, having been born December 16, 2002.  (N.T. 5, 11)[2] K.L. described a discussion she had with T.L. one afternoon shortly after T.L. had arrived home from school on the bus.  (N.T. 14)  K.L. explained that T.L. had exhibited poor behavior on the way to the babysitter's on that morning; K.L. had asked T.L. what was going on and had explained to her that they were a family and that they needed to stay close and be a team.  (N.T. 5)  T.L responded that she had a secret, stating that Defendant had pulled a weenie out of his butt and had made her lick it.  (N.T. 6)  At the time T.L. made this statement, the two were in the car on the way to the laundromat.  (N.T. 6)  After making the revelation, T.L. started crying, curled up into a ball and put her hands up to her face.  (N.T. 6)  When K.L. asked her questions to get a better understanding of this statement, T.L. answered in a broken voice.  (N.T. 6)

T.L. explained to K.L. that the incident occurred at a time when the family did not have a dog.  (N.T. 11)  K.L. testified that their family dog had died and that

---

[2] References are to the Tender Years Hearing.

they got a new dog, Niki, in March 2009. (N.T. 12)[3] This would have meant that the incident occurred in March 2009 during the period between their dog's death and Niki being brought into the home, which was approximately a year and seven months prior to her telling K.L. (N.T. 11) K.L. discussed the difference between lying and telling the truth with T.L. and then reported the allegations to the National Child Abuse Hotline. (N.T. 8 – 9)

The Commonwealth next presented the testimony of Ana Marquez, a child abuse investigator with Lebanon County Children and Youth Services. (N.T. 22) Marquez had interviewed T.L. on October 5, 2010, approximately a week after T.L. revealed the incident to K.L. (N.T. 24) T.L. also related to Marquez that Defendant had made her lick his weenie, hotdog or sausage and that it went into the butt. (N.T. 27) Marquez used a male anatomical doll to identify that T.L. used the terms weenie, hotdog and sausage to refer to a penis and T.L. demonstrated a licking motion to Marquez when describing the incident. (N.T. 26 – 28) T.L. said that the hotdog she had licked was attached to Defendant's body. (N.T. 28, 31) T.L. informed Marquez that the incident occurred right before bedtime when her mother was probably taking the trash out or watching television. (N.T. 30) T.L.

---

[3] At the bench trial, K.L. explained that the family dog, Mojo, had been put down on Saint Patrick's Day in 2009 and that their new dog, Niki, was brought home within three days to a week of Mojo's death. (Bench Trial N.T. 49)

also told Marquez that she had been uncomfortable when a boy touched her "butt" at school, and that her mother had told the principal. (N.T. 34) Marquez also discussed the difference between lying and telling the truth with T.L. (N.T. 26)

The Commonwealth's final witness was Christopher Cook, who had been a county detective with the County of Lebanon in October 2010 and had interviewed T.L. on October 14, 2010. (N.T. 52) Cook had shown T.L. a diagram of an adult male. (N.T. 55) She identified the picture as depicting a male, pointed to the penis and told him that she called it a weenie, hotdog or sausage. (N.T. 55) She informed Cook that she had seen Defendant's and that he had made her lick it and that it had no taste and was chewy. (N.T. 57) She explained that Defendant did not have any hair "down there" in his genital area. (N.T. 59) T.L. told Cook that this had happened twice in her bedroom at bedtime. (N.T. 57, 69) When Cook asked about her delay in telling her mother about it, T.L. replied that she was afraid her mother would get mad and, also, that it was gross. (N.T. 59) She indicated that she had discussed it briefly with her father's older daughter, Kalee, and that Kalee had also said that it was gross. (N.T. 59)

At the conclusion of the testimony, defense counsel objected to the admission of T.L.'s statements for use at trial on the basis that they were hearsay statements made long after the fact of the alleged incident. (N.T. 73 – 74) The

5

Court found that the Commonwealth had met its burden with regard to the requirements of the Tender Years statute[4] and that the statements were therefore admissible at the trial. (N.T. 75)

At the bench trial which followed, the victim, T.L., testified that Defendant had entered her bedroom at bedtime on two separate occasions, pulled out his weener and asked her to lick it. (N.T. 14 – 18)[5] She also noted that Defendant's pubic area did not have a lot of hair on it, maybe one or two pieces. (N.T. 19) The testimony from the Tender years hearing was incorporated with the proviso that defense counsel would be permitted to cross-examine K.L., Marquez and Cook.

K.L. was questioned about a romantic relationship she had with Defendant and the circumstances surrounding the breakup of that relationship. (N.T. 36 – 43) She testified that there were times when Defendant was left alone in her home with T.L. during that relationship and that this occurred when Defendant was cooking dinner and would send K.L. to the grocery store to pick up some items needed for the dinner. (N.T. 34) K.L. testified that she had intimate relations with Defendant and confirmed that Defendant's pubic area was sometimes shaven. (N.T. 48) She added that when the hair grew in, it was light

---

[4] 42 Pa.C.S.A. §5985.1.

[5] Hereafter, references are to the bench trial, also held on October 5, 2011.

in color. (N.T. 48) She also admitted that T.L. sometimes lied about childish things, such as what she would wear to school, but that the child did not lie about important matters. (N.T. 53, 60)

Defendant also testified at the bench trial. He admitted that he had been alone with T.L in her home (N.T. 163), but denied T.L.'s allegations. (N.T. 154, 158 – 160) He explained that he had dated K.L. for nearly one and a half years, but that they had only had sexual intercourse once. (N.T. 156) He further testified that K.L. had wanted to continue their romantic relationship when he broke it off. (N.T. 161) He testified that his public hair was the same color as the hair on his head, dark brown, and that he had only shaven his pubic area twice, both times at K.L.'s request. (N.T. 160)

In further presenting his defense, Defendant introduced the testimony of Amanda Sechrist who testified that K.L. came to Defendant's house when he was incarcerated on these charges and yelled at her (N.T. 117), Julie Sechrist (Defendant's girlfriend) who testified that K.L. would come to various places, such as a bar and grocery store, when Sechrist was there with Defendant (N.T. 121 – 124), and Michele Gustwhite, Defendant's sister, who testified of a conversation with K.L. in January 2010 when K.L. admitted that she had only had intercourse with Defendant one time, and that she wanted Defendant to remain in their

7

relationship. (N.T. 127 – 130) In addition, Defendant presented the testimony of seven character witnesses who testified as to Defendant's favorable reputation in the community. (N.T. 132 – 150)

At the conclusion of the testimony, the Court viewed Defendant's pubic hair in chambers. We found that his pubic hair was the same color as the hair on the top of his head. (N.T. 166) On the following day, October 6, 2011, we issued an Order finding Defendant guilty on all counts.

## 2. DISCUSSION

### A. SUFFICIENCY OF THE EVIDENCE

A claim challenging the sufficiency of the evidence is a question of law. *Commonwealth v. Smith,* 853 A.2d 1020 (Pa. Super. 2004). The evidence adduced at trial must be viewed in the light most favorable to the verdict winner to determine whether there is sufficient evidence to enable the fact- finder to find every element of the crime beyond a reasonable doubt. *Commonwealth v. Walker,* 874 A.2d 667, 677 (Pa. Super. 2005). Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. *Id.* The Commonwealth is entitled to all reasonable inferences arising from the evidence and all facts which the Commonwealth's

8

evidence tends to prove are treated as admitted. *Commonwealth v. Hunter,* 768 A.2d 1136 (Pa. Super. 2001). Only where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, is the evidence deemed insufficient as a matter of law. *Commonwealth v. Santana,* 333 A.2d 876 (Pa. 1975). The task of the appellate court in reviewing the sufficiency claim is to determine whether, accepting as true all the evidence and all reasonable inferences therefrom, upon which, if believed, the trier of fact could properly have based its verdict, it is sufficient in law to prove beyond a reasonable doubt that the defendant is guilty of the crime or crimes of which he has been convicted. *Commonwealth v. Williams,* 316 A.2d 888 (Pa. 1974). It is well established that our Court will not reverse a trial court's credibility determination absent the court's abuse of discretion as fact finder. *Commonwealth v. Hughes,* 908 A.2d 924 (Pa. Super. 2006).

Defendant was convicted of two counts of Involuntary Deviate Sexual Intercourse pursuant to 18 Pa.C.S.A. § 3123(b), First and Second Occurrence. A person commits this offense when "the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. §3123(b). "Deviate sexual intercourse" is defined as "sexual intercourse per os or

9

per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures." 18 Pa.C.S.A. §3101. "Sexual intercourse, [i]n addition to its ordinary meaning, includes intercourse per os or per anus, with some penetration however slight; emission is not required." 18 Pa.C.S.A. §3101. The crime of involuntary deviate sexual intercourse occurs when the actor coerces the victim to engage in acts of anal and/or oral intercourse. *Com. v. Andrulewicz,* 911 A.2d 162 (Pa. Super.2006) appeal denied 911 A.2d 162 (Pa. 2007). The requirement of "penetration" is met by oral contact, such as licking of the penis. *Commonwealth v. L.N.,* 787 A.2d 1064 (Pa. Super. 2001), appeal denied 800 A.2d 931 (Pa. 2002).

Defendant was also convicted of Indecent Assault, third-degree felony, pursuant to 18 Pa.C.S.A. §3126(a)(7) which is defined as follows:

**§ 3126. Indecent assault**

**(a) Offense defined.--**A person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and:

10

(7) the complainant is less than 13 years of age; ... .

**(b) Grading.**--Indecent assault shall be graded as follows:

(3) An offense under subsection (a)(7) is a misdemeanor of the first degree unless any of the following apply, in which case it is a felony of the third degree:

(ii) There has been a course of conduct of indecent assault by the person.

18 Pa.C.S.A. §3126. "Indecent contact" is defined as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in either person." 18 Pa.C.S.A. §3101.

Finally, Defendant was convicted of the offense of endangering the Welfare of Children pursuant to 18 Pa.C.S.A. §4304:

### § 4304. Endangering welfare of children

**(a) Offense defined.--**

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

(3) As used in this subsection, the term "person supervising the welfare of a child" means a person other than a parent or guardian that provides care, education, training or control of a child.

18 Pa.C.S.A. §4304(1), (3).

After viewing the evidence in the light most favorable to the Commonwealth, we have no doubt that we correctly found that the evidence was sufficient to establish the elements of each of these crimes. T.L. testified that Defendant had her lick his penis while she was in his care when her mother was absent from the home. The evidence established that T.L. was born on December 16, 2002, thus being only five years old, at the time of the incident. A course of conduct was established as T.L. testified that the same conduct occurred on two separate occasions. T.L. related the same factual scenario on various occasions, to her mother, to Marquez and to Cook. As the trier of fact, we were in the best position to observe the demeanor of the witnesses and we were entitled to accept this testimony as credible. We do not believe we abused our discretion in doing so.

### B. WEIGHT OF THE EVIDENCE

Challenges to the weight of the evidence and sufficiency of the evidence are discrete inquiries. *Commonwealth v. Davis,* 799 A.2d 860 (Pa.Super. 2002). A motion for a new trial on the grounds that the verdict is contrary to the weight of the evidence concedes that there is sufficient evidence to sustain a verdict but contends that the verdict is against the weight of the evidence. Id. The decision

12

whether to grant a new trial on this basis rests within the discretion of the trial court. *Commonwealth v. Holmes*, 663 A.2d 771 (Pa.Super. 1995). In reviewing the weight of the evidence, all the evidence should be examined. *Commonwealth v. Gonce*, 466 A.2d 1039 (Pa.Super. 1983).

A trial court should award a new trial on the ground that the verdict is against the weight of the evidence only when the verdict is so contrary to the evidence as to shock one's sense of justice and make the award of a new trial imperative so that right may be given another opportunity to prevail. *Commonwealth v. Gonce, supra.* The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Simmons,* 662 A.2d 621, 630 (Pa. 1995). The function of the trier of fact is to pass on the credibility of witnesses and determine the weight to be accorded to a particular piece of evidence. *Id.*

After reviewing the evidence in this case in its entirety, we also find that our finding as to Defendant's guilt was not contrary to the weight of the evidence by any means. Again, we note that T.L.'s statements were consistent throughout the investigation of the matter and trial. She used nearly the same language each time and described the incident with the same details in her account on different

13

occasions to different persons. Although Defendant took the stand and denied these allegations and presented a deluge of character witnesses, as the trier of fact, we were entitled to believe the testimony presented by the Commonwealth and to accord that testimony more weight and credibility than that proffered by Defendant.

### C. WAIVER OF JURY TRIAL

**Rule 620. Waiver of Jury Trial**

In all cases, the defendant and the attorney for the Commonwealth may waive a jury trial with approval by a judge of the court in which the case is pending, and elect to have the judge try the case without a jury. The judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness.

Pa.R.Crim.P. 620.

In order to determine whether a defendant's waiver of jury trial was voluntary, a court should examine the circumstances surrounding the defendant's waiver. *Commonwealth v. Shablin*, 524 A.2d 511 (Pa. Super. 1987)(decided under former Pa.R.Crim.P. 1101 (repealed)). If the appellate court finds that the record does not support a valid waiver of jury trial by a defendant, a remand for a new trial is unnecessary; instead, a remand for an evidentiary proceeding to

14

determine whether the waiver was knowing and intelligent is appropriate. See,

*Commonwealth v. DeGeorge*, 485 A.2d 1089 (Pa. 1984)(decided under former Pa.R.Crim.P. 1101 (repealed)).

Defendant and the Commonwealth have both noted that the record in this case is void of any supporting documentation or of any colloquy regarding Defendant's waiver of his right to a jury trial. The Court's search for these items was likewise fruitless. We attempted to examine the circumstances of Defendant's request for a bench trial and waiver of trial by jury by scheduling an evidentiary hearing regarding the issue of his waiver. Defendant objected as to the belated scheduling of the hearing and notified the Court that he intended to proceed with his appellate rights. Due to our lack of any evidence, we are therefore unable to make any determination regarding the validity of Defendant's waiver. It is the opinion of this Court that the matter should be remanded on this issue in order that we may proceed with such a hearing and render a decision in accord with the evidence adduced.

## d.  ADMISSION OF EVIDENCE UNDER THE TENDER YEARS EXCEPTION

### § 5985.1. Admissibility of certain statements

(a) General rule.--An out-of-court statement made by a child victim or witness, who at the time the statement was made was 12

15

years of age or younger, describing any of the offenses enumerated in 18 Pa.C.S. Chs. 25 (relating to criminal homicide), 27 (relating to assault), 29 (relating to kidnapping), 31 (relating to sexual offenses), 35 (relating to burglary and other criminal intrusion) and 37 (relating to robbery), not otherwise admissible by statute or rule of evidence, is admissible in evidence in any criminal or civil proceeding if:

(1) the court finds, in an in camera hearing, that the evidence is relevant and that the time, content and circumstances of the statement provide sufficient indicia of reliability; and

(2) the child …:

(i) testifies at the proceeding; … .

42 Pa.C.S.A. §5985.1.

At the conclusion of the Tender Years hearing, we found that the Commonwealth had met its burden with regard to the requirements of this statute. The evidence presented indicated that T.L. was under the age of twelve years old when the statements were made and that the offenses charged, sexual crimes against a child, were within those specifically included in the provisions of the statute. In addition, we found the statements to be relevant to the charges – all of T.L.'s statements to K.L, Marquez and Cook described the incident or were materially related to the incident. The time, content and circumstances provided sufficient indicia of reliability of these statements. T.L.'s initial statements to K.L. were made spontaneously, with no prompting, in response to a simple question

16

of "what was going on" when T.L. had exhibited unruly behavior. T.L. consistently gave strikingly similar statements to K.L. and to Marquez and Cook on various occasions. Each statement contained nearly identical terms and gave the same details. The terminology used in the statements, i.e., weenie, hotdog, sausage butt, is such that would ordinarily be expected to be used by a child of five years old. Moreover, T.L. had no reason to fabricate such allegations. In fact, the child indicated that she was actually afraid that her mother would become angry with her if she told her of the incident. Lastly, T.L. testified at the bench trial. For these reasons, we held that the statements came within the scope of those permitted under this statute and held that they were admissible at the bench trial of the matter.